## No: 15,698.

## HEWITT *v.* STATE CIVIL SERVICE COMMISSION, ET AL., WATROUS, INTERVENER.

(167 P. [2d] 961)

Decided March 25, 1946.   Rehearing denied April 15, 1946.

Messrs. BANCROFT, BLOOD & LAWS, for plaintiff in error.

Mr. H. LAWRENCE HINKLEY, Attorney General, Mr. DUKE W. DUNBAR, Dputy, Mr. CLARENCE L. BARTHOLIC, Assistant, for defendants in error.

Mr. MAX P. ZALL, for intervener.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFF in error, plaintiff below, is hereinafter referred to as Hewitt, defendants in error as the commission, and the intervener as Watrous.

Hewitt brought this action in the nature of mandamus to compel the commission to vacate, as illegal, an examination for the position of state highway engineer and give another in accord with what he alleged were the legal, mandatory requirements therefor, said to have been violated to his detriment. His complaint contained two causes, and motions to dismiss as to each for insufficient facts were sustained. To review the judgment entered accordingly he prosecutes this writ. His specifications present simply his contentions that each cause

was sufficiently stated and that the court erred in holding otherwise.

The state highway engineer is the chief executive officer of the highway department, vested with wide powers and charged with multifarious duties and the required qualifications are commensurate therewith. '35 C.S.A., c. 143, §104 (Amended S.L. '45, c. 211), §105.

The office in question being in the classified civil service, and a vacancy existing therein, the commission held an open examination March 26, 1945, to fill that vacancy. Hewitt, then and for many years last past employed in the department and under civil service, took the examination and failed of certification. Watrous, not in the department and not in the service of the state, also took the examination and was held entitled to certification and appointment.

The first cause of action attacks the examination as arbitrary and unlawful because it was open instead of promotional and was not rated objectively as provided by the rules of the commission. The second attacks the examination because, as is said, of the unfairness of the questions, i.e., they were inadequately stated, impractical, purely academic, controversial, tricky, and required wrong answers, and because Hewitt was accorded no proper credit for training and experience.

The only constitutional limitation applicable to appointments such as that here in question is that they "shall be made according to merit and fitness, to be ascertained by competitive tests of competence, the person ascertained to be the most fit and of the highest excellence to be first appointed." Colo. Const., Art XII, §13. The only statutory limitation so applicable is a verbatim enactment of the foregoing. '35 C.S.A., c. 36, §2. Very broad rule-making powers are conferred on the commission. '35 C.S.A., c. 36, §5. It has adopted rules accordingly and the following are applicable excerpts therefrom:

"Examinations for entrance to the classified service

shall be conducted under the direction of the Commission on an open competitive basis. Examinations shall be practical in nature, shall be constructed to reveal the capacity of the applicant for the particular position for which he is competing, as well as his general background and related knowledge, and shall be rated objectively. A practical written test shall be included, except that where peculiar and exceptional qualifications of a scientific or professional nature are required and competition through an assembled examination is impracticable, an unassembled examination may be held. The Commission shall determine when competition through an assembled examination is impracticable. The type of examination to be given shall be decided upon before the examination is scheduled and shall be stated in the examination announcement." Par. 1, sec. 1, Art. V.

"Examinations shall also include * * * (c) An oral examination for positions requiring frequent contact with the public or which involve important supervisory or administrative duties." Par. 4, id.

"As far as is practicable and feasible, a vacancy in the classified service shall be filled by promotion of a qualified permanent employee, based upon individual performance as evidenced by recorded service ratings, with due consideration for length of service and upon capacity for the new position." Par. 1, Art. IX.

The complaint contains no charge of favoritism, special consideration, fraud, collusion, or dishonesty, and no allegation of fact showing abuse of discretion or arbitrary action. Generally speaking, whether an examination be promotional or open, is a matter within the discretion of the commission. *Davier v. Reavy*, 39 N.Y.S. (2d) 269; 10 Am. Jur., p. 930, §10. Whether a promotional examination is practicable is an administrative, not a judicial, function. *DeStefano v. Civil Service Com.*, 130 N.J.L. 267, 32 A. (2d) 284.

1. From the foregoing it seems clear that the char-

acter of the examination to be given was entirely within the discretion of the commission. Not only is the record, in our judgment, devoid of any sufficient allegation of abuse of that discretion but the admitted facts point clearly to the contrary. The positions occupied by Hewitt from the beginning of his service until January, 1945 were "structural draftsman," "structural designer" and "assistant engineer." Aside from this he served from that date (when a vacancy occurred) until November, 1945, when he instituted this action, as state highway engineer. Considering only this situation and the necessary qualifications for the position here in question, as above indicated, the commission might well have decided that it was for the best interests of the service to hold an open examination. In any event the discretion was vested in it and no clear abuse appearing the courts are powerless to interfere.

2. As to the second cause of action, a bill of particulars was required, filed, and appears in the record. It sets out verbatim the written questions propounded, to the number of 222. The first 198 of these consist principally of questions propounded by the commission with numerous suggested answers thereto, usually about five answers to each question. The remainder are positive statements as to which the applicant was required to answer "true" or "false."

As to the complaint that the commission violated its rules that the examination should be rated "objectively" it is sufficient to say that the violations appear to be trivial, that the character of the position for which the examination was held justified some departure in order to be fair and informative and that it is clearly apparent that these do not disclose the entire examination because it is alleged in the complaint that it was "conducted in three parts or phases, to wit, 'written examiantion,' 'training and experience' and 'oral examination,' in all of which plaintiff participated." A large discretion as to the method of testing applicants is vested in the com-

mission and that discretion can not be interfered with by the court save in the clearest case of abuse. *Getty v. Witter,* 107 Colo. 302, 111 P. (2d) 636.

■ "The mere fact that some of the questions bear only incidentally upon the particular duties of the position is not fatal; nor is the fact that the questions may seem somewhat vague and ambiguous. Some basis of reasonableness is, of course, required, but given this, the courts permit the examiners a pretty free hand." Field on Civil Service Law, p. 86.

■ As to the credits to be allowed for training, experience and general qualifications, "It is impossble for this court and it would be presumptuous for the court to say what percentage credit should be allowed." *Rosenstrauch v. Reavy,* 21 N.Y.S. (2d) 358.

For us to attempt to pass upon this long list of questions and determine which are proper and which are improper, and sustain or set aside this examination in accordance with our conclusions, or to decide whether in the case before us a promotional examination was or was not "practicable and feasible" would involve usurping all the discretion clearly vested in the commission and substitute ourselves as the examiners. We might almost with equal propriety attempt the formulation of the questions propounded as a test for admission to the practice of medicine.

Our conclusion is that as to all the substantial objections here urged to the character of the examination given and the questions propounded these rested in the sound discretion of the commission, and, finding no clear abuse thereof, the judgment is affirmed.