STAGGE ET AL. *v.* CITY SERVICE COMMISSION OF BALTIMORE CITY ET AL.

[No. 286, September Term, 1957.]

*Decided July 2, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Samuel M. Campanaro* and *Wilson K. Barnes* for the appellants.

*Shirley Brannock Jones, Assistant City Solicitor of Baltimore*, with whom were *Thomas N. Biddison, City Solicitor, Hugo A. Ricciuti, Deputy City Solicitor,* and *F. Clifford Hane, Assistant City Solicitor,* on the brief, for the appellees.

HAMMOND, J., delivered the opinion of the Court.

The City Service Commission of Baltimore determined to hold an open examination to fill a vacancy in the position of Superintendent of Maintenance in the Fire Department. Appellant Stagge, who is Assistant Superintendent of Maintenance, feeling that an open examination would deprive him of the advantages his experience and seniority would give him in a promotional examination and that the City Charter and the rules of the Commission required a promotional examination, filed a petition in equity against the Commission and the Board of Fire Commissioners of Baltimore City to enjoin the holding of the open examination. The Commission and the Board demurred to an amended bill, alleging that the Commission had discretion, of which it could not be deprived, as to whether the examination should be open or promotional, and that Stagge had not shown in the petition that he would be hurt as to tenure, compensation or classification by the holding of the open examination. The decree appealed from sustained the demurrer and dismissed the amended petition, and also rescinded an order that had been passed *ex parte* five months after the filing of the original petition by which the appellant, William Heinekamp, president of the Classified Municipal Employees Association, had been permitted, as an individual, to intervene.

The amended petition alleges that Stagge had served satisfactorily for forty-three years in the repair shop of the Fire Department; that he was serving as "Battalion Chief-Repair Shop" at the time of the retirement of the head of the shop,

470

Deputy Chief Gallion; that on January 1, 1957, he was temporarily put in charge of the shop (and has since been in charge, serving satisfactorily); that by reason of the retirement of Deputy Chief Gallion, the Commission on March 7, 1957, issued an "Announcement of Open Examination for the Position of Superintendent of Maintenance (Fire Department)", making said examination open to all persons with the qualifications specified, regardless of whether or not they had been previously employed in the Fire Department; that the duties of Superintendent of Maintenance as specified by the Commission are substantially and actually the same as had always been required to be performed by the Deputy Chief-Repair Shop; that on August 1, 1957, the Board abolished the position and the designation of Battalion Chief-Repair Shop and has designated said position as "Assistant Superintendent of Maintenance (Fire Department)"; that Stagge was performing the same identical duties and services and had the same responsibilities under his new title as he had under Battalion Chief-Repair Shop; that the change and designation of the titles and positions of Deputy Chief-Repair Shop and Battalion Chief-Repair Shop to Superintendent of Maintenance and Assistant Superintendent of Maintenance, respectively, are mere changes of names without changes in actual duties and, therefore, the contemplated act of the Commission in scheduling an open examination to select a successor to fill the vacancy created by the retirement of the Deputy Chief constitutes an abuse of discretion and is contrary to the regular practice of the Commission, which in the forty-three years that Stagge has been employed in the Fire Department has been to make all promotions in the department on a promotional basis in accordance with the Commission's rules and provisions of the City Charter; that its failure to comply with sections 143 and 151 of the City Charter, as to promotional examinations, is arbitrary, capricious and contrary to the best interests of the service; that the open examination proposed to be given by the Commission would afford Stagge no credit to which he is entitled under section 151 of the Charter, because of the efficiency with which he has performed his duties in the past, his seniority

in service and his right of promotion by reason of his capable service over a long period of time; that there are a sufficient number of qualified men now in the service of the Baltimore City Fire Department capable of competently, efficiently and effectively performing the duties of Deputy Chief-Repair Shop, to make the holding of a promotional examination practicable; and that the holding of an open examination would be contrary to the good of the service and in violation of the provisions of the Charter.

The parties are agreed that equity is a proper forum, that the case is controlled by the applicable provisions of the City Charter and the applicable rules of the Commission, that the position involved is in the Competitive Class of the Classified Service, and that the change in titles did not amount to the creation of new positions.

The Baltimore City Charter (Flack, 1949) provides in sections 142 through 156 for the City Service Commission and sets out its powers and duties in relation to the classified service. Section 143 directs the Commission to make rules to carry out the purposes of the classified service "and to provide for appointments and employments in all positions in the classified service hereinafter mentioned, based on merit, efficiency, character and industry * * *." Section 144 provides for classification and reclassification of all offices and positions and directs that they shall be classified "with reference to the examinations hereinafter provided for, as Exempt, Competitive, Non-Competitive and Labor Class * * *", and adds that "no appointment to any such offices or positions shall be made except under and according to the rules of the Commission." Section 146 sets out what positions shall be in the Competitive Class. Section 151 directs the Commission to provide in its rules for the keeping of a record of efficiency of each employee in the Competitive Class "and for making promotions on the basis of merit, to be ascertained by competitive examinations, by conduct and capacity in office, and by seniority in service, and * * * that vacancies shall be filled by promotions in all cases where, in the judgment of the Commission, it shall be for the best interests of the service so to fill such vacancies."

Rule 17 of the Commission deals with fitness tests for appointments in the Competitive Class, and requires that no appointment in that class is to be made unless the appointee has been found qualified by "entrance fitness tests or by promotion fitness tests." The rule goes on to provide that: "Vacancies in positions in the Competitive Class shall be filled, so far as practicable, by promotions from among persons holding positions in a lower grade in the City Service; provided, the Commission may, by action in its minutes, determine that such promotions shall be among persons holding positions in a lower grade in the department, office or institution in which the vacancy exists. Promotions shall be based upon merit, to be ascertained by fitness tests to be provided by the Commission, and upon the superior qualifications of the person promoted as shown by his previous service, due weight being given to seniority and experience." Rule 45, dealing with lines of promotion, provides that the Commission shall establish and prescribe lines of promotion and that "Whenever promotion fitness tests are to be held under the provisions of Rule 17 for a superior class, the Chief Examiner shall issue public notice and hold promotion fitness tests for such superior class, which tests shall conform to the provisions of Rule 20 for promotion fitness tests, provided, however, that the Chief Examiner may, in his discretion, hold original fitness tests simultaneously with such promotion fitness tests for the same class of positions, and provided, further, that the Commission, by order entered in its minutes, may direct that promotion fitness tests be omitted, and original fitness tests be held in their stead whenever, in the judgment of the Commission, the number of qualified persons in the service, or the good of the service generally, makes such action desirable (Section 151)." Rule 48, headed "Efficiency and Promotion", provides that the rating to be entered for a competitor on promotion fitness tests as to efficiency is to be determined by averaging the periodical efficiency rating reported by his department for a stipulated time.

We think the allegations of the amended petition are sufficient to require an answer by the appellees and a revealing of

the facts relied on by the Commission in making its decision to hold an open examination. Section 151 of the Charter provides that the Commission shall provide by rule for the making of promotions on the basis of merit in all cases where "in the judgment of the Commission it shall be for the best interests of the service so to fill such vacancies." Rule 17 carries out the statutory mandate and directs that "so far as practicable" vacancies shall be filled by promotions determined by promotional examinations and by "the superior qualifications of the person promoted as shown by his previous service, due weight being given to seniority and experience." The Commission and the Board argue that there is a conflict between Rule 17 and Section 151, and that the statute must control. We read Rule 17 as complementing the statute, as the statute directs that it should, and see no conflict. The Commission has said in Rule 17, in exercising the discretion given it by the statute, that as a matter of general policy it is in the best interests of the service to fill vacancies in the Competitive Class by promotional examinations "so far as practicable", and in Rule 45 has, in effect, provided standards as to practicability by saying that original fitness tests may be held in the stead of promotional examinations whenever "the number of qualified persons in the service, or the good of the service generally, makes such action desirable." Reading section 151 and Rules 17 and 45 together, as we do, makes decisions in other States, relied on by Stagge, persuasive for a finding that the Commission must explain why a promotional examination should not be given to fill the vacancy of Superintendent of Maintenance. In *Allen v. McKinley* (Cal.), 117 P. 2d 342, 347, 348, the municipal charter provided that promotional examinations should be given whenever the Commission deemed it "to be practicable". The Supreme Court of California held that the quoted language constituted a limitation on the discretion of the Commission, and said: "Where it is practicable to hold a promotional examination, such examination must be given. * * * If such an examination is not to be given, a valid reason why not, must exist. When the Commission's action is challenged, and the petitioner produces a *prima facie* case

that a promotional examination is practicable, the burden is on the Commission to justify its action." The Court added: "If there are large numbers of persons in the service fully qualified to take the examination for the eligible list for the position in question, how can the Commission determine before.it gives a promotional examination to those persons, that it is not 'practicable' to give such an examination? Obviously, under such circumstances, to so determine is an abuse of the discretion vested in the Commission." See also *Rhodehamel v. Civil Service Board* (Cal.), 117 P. 2d 349; *People ex rel. Williams v. Errant* (Ill.), 82 N. E. 271; *Ptacek v. People ex rel. Deneen* (Ill.), 62 N. E. 530.

The amended petition alleges that for some forty years (which is approximately the period the classified service has been in existence), the position involved has been in the Competitive Class and has been filled by a promotional examination; and further alleges that there are "number of qualified men now in the service of the Fire Department" capable of competently, effectively and efficiently performing the duties of the position. Since the allegations are that the Commission has consistently determined it to be in the best interests of the service that the position be filled by promotional examination and that there are a number of persons in the department well qualified to take the promotional examination who could satisfactorily fill the position and these allegations are admitted by the demurrer, we think that on the pleadings there is made out a *prima facie* case of abuse of discretion, amounting in law to unreasonable, arbitrary or capricious action by the Commission.

Nothing in the charter, the rules, or this opinion prevents the Commission from holding an open examination in any case, if in its judgment there are not a sufficient number of qualified persons to take a promotional examination, or if another reason exists which makes it, in the view of the Commission, in the best interests of the service (and so of the public) to do so. We hold merely that in the present posture of the case before us, the Commission stands in the position of having deprived Stagge of a right to seek promotion by tests in which his experience and seniority will

work to his advantage, and that the Charter and the Rules contemplate that he should have this right unless the Commission in the exercise of its judgment determines that there are valid reasons in the public interest why he should not.

We find no abuse of discretion in the action of the chancellor in rescinding the order that had admitted the appellant Heinekamp as an intervenor. The matter of intervention primarily is one for the sound discretion of the trial court, determined in the light of the would-be intervenor's interest in the subject matter of the suit and the issues raised by that proceeding. *Douglas v. Friedel,* 216 Md. 11, 14-15; *Nyburg v. Solmson,* 205 Md. 150, 156. The order to intervene was passed *ex parte* without prior notice to the Commission or the Board, and when they learned of the intervention they promptly moved the court to rescind the order. Heinekamp does not contend that he has any interest in the suit by reason of his being president of the Municipal Classified Employees Association, and he was permitted to intervene as an individual, not as president of the Association. He does not allege that he is qualified, or intends, to take the proposed examination. He has shown no such standing or interest as would warrant his intervention as of right. We think there was no abuse of the court's discretion in finally denying him the right to intervene.

> *Decree affirmed in part and reversed in part, and case remanded for further proceedings not inconsistent with this opinion. Costs to be paid by appellees.*