## LAW DEPARTMENT EMPLOYEES UNION v CITY OF FLINT

1. APPEAL AND ERROR—EQUITY—DE NOVO CONSIDERATION.

   The Court of Appeals considers appeals from cases in equity on a *de novo* basis.

2. MUNICIPAL CORPORATIONS—CIVIL SERVICE COMMISSION—PROMOTIONAL EXAMINATION—OPEN COMPETITIVE EXAMINATION—DISCRETION.

   A city civil service commission has limited discretion in determining whether a vacancy should be filled by promotional or open-competitive examination where the city charter requires that a promotional exam be given where practicable (Flint Charter, § 247).

3. MUNICIPAL CORPORATIONS—CIVIL SERVICE COMMISSION—PROMOTIONAL EXAMINATION—ELIGIBLE EMPLOYEES—DISCRETION.

   The number of eligible employees is a factor which a municipal civil service commission must consider in making its decision as to whether a promotional exam is practicable, but where it is clear that no other positions in the civil service provide the requisite experience, the commission may make the decision without first determining how many in-service employees desire to compete for the opening (Flint Charter § 247[a]).

4. WORDS AND PHRASES—MUNICIPAL CORPORATIONS—CITY CHARTER—MANDATORY PROVISION—DISCRETION.

   "Shall" is generally used to designate a mandatory provision of a city charter while "may" designates a provision which grants discretion.

5. MUNICIPAL CORPORATIONS—CIVIL SERVICE COMMISSION—CITY CHARTER.

   A municipal civil service commission is, under a city charter provision, responsible for establishing the minimum qualifica-

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 703.
[2, 3] 15 Am Jur 2d, Civil Service § 10.
[4] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 398 *et seq.*
[5] 15 Am Jur 2d, Civil Service § 6 *et seq.*
[6] 2 Am Jur 2d, Administrative Law § 748 *et seq.*

tions, duties and responsibilities for all positions in the classified service (Flint Charter, § 236).

6. ADMINISTRATIVE LAW—DISCRETION—DISCRETIONARY DECISION—
   CHALLENGE—BURDEN OF PROOF.
   A party challenging a discretionary decision of an administrative body must show that the decision was arbitrary, unreasonable, capricious or an abuse of discretion; the burden of proof remains with the challenging party.

Appeal from Genesee, John W. Baker, J. Submitted March 4, 1975, at Lansing. (Docket No. 17864.) Decided September 22, 1975.

Complaint by Law Department Employees Union, Local 1600, AFSCME, AFL-CIO, and others against the City of Flint, Flint Civil Service Commission, and Bryan W. Rapp, City Manager, for injunctive relief to vacate three classified service positions and for a declaratory judgment construing classified service provisions of the city charter. Judgment granted vacating the three positions and ordering a procedure to be followed in filling all city classified service vacancies. Defendants appeal. Reversed.

*White, Newblatt & Grossman, P. C.,* for plaintiffs.

*Patrick H. Hynes (A. Ronald Sirna, Jr.,* of counsel), for defendants.

Before: QUINN, P. J., and BASHARA and N. J. KAUFMAN, JJ.

N. J. KAUFMAN, J. This case involves a dispute over methods used by defendant Flint Civil Service Commission (commission) to fill three vacancies in the Flint classified service. More generally, it requires our determination of how much discretion

the commission is granted by Flint Charter § 247 to decide whether a vacancy should be filled by a promotional or an open competitive exam. The focal point of this controversy is the first sentence of § 247(a):

"Vacancies in higher positions in the classified service shall be filled *so far as practicable* by the promotion or advancement of employees in the service." (Emphasis supplied.)

Under the Flint Charter, civil service job vacancies may be filled by one of three methods: (1) appointment of the employee who scores highest on a promotional exam, (2) appointment of one of the three people who score highest on an open competitive exam or on an interdepartmental exam, or, in rare cases, (3) by promoting, without an examination, the sole employee eligible for promotion. Each of the three vacancies in dispute was filled by an open competitive exam, rather than by a promotional exam. Plaintiffs, a number of unions representing employees in the Flint civil service, brought suit to have these positions declared vacant. They contended that because there existed employees who were eligible for promotion, it was practicable for the vacancies to have been filled by promotional exams and promotional examinations should have been given. The commission contended that the decision to hold open competitive exams was a valid exercise of the discretion which, it alleged, the Flint Charter provides.

This case was commenced with a complaint and order to show cause filed by the plaintiffs in Genesee County Circuit Court praying that the city of Flint be enjoined from employing Daniel Boggan, Jr. as the Deputy City Manager for Operations on

a provisional basis and from permanently filling the vacancy to which Mr. Boggan had been appointed after having been certified as one of the three highest scorers on the open competitive test. The plaintiffs' complaint alleged that Mr. Boggan's employment was in violation of the charter of the City of Flint on the grounds that the Civil Service Commission had failed to make a determination that it was not practicable to fill the position by promotion of employees already within the classified service of the City of Flint. The plaintiffs further alleged that the provisional appointments of Frank N. Patitucci to the position of Director of Community Development on January 26, 1972 and Ray Vyvyan to the position of Buildings and Inspection Director on May 30, 1972 were likewise improper and in violation of the provisions of the city charter. Both Patitucci and Vyvyan had, likewise, been provisionally appointed and then given permanent appointments when they were among the top three qualifiers from the open competitive exam.

On April 4, 1973, after a lengthy trial and submission of detailed briefs, the court issued an eight page opinion, in which it analyzed the meaning of § 247(a). The court expressed its opinion that § 247(a) concerned vacancies and applied to the positions in question in the instant case.

The trial court stated the following conclusions pertinent to this appeal:

"The Court concludes that Plaintiffs should have the following relief prayed for in their Complaint:

"1. That the three positions in question should be declared vacant because of the failure of the Civil Service Commission to comply with requirements of the Charter.

"2. (A) Sec. 247(a) should apply to all vacancies in higher positions.

"(B) The Civil Service Commission should first determine if there are eligible employees qualified to take an in service examination.

"(C) Notice of such in service examination should be posted to permit employees to seek to qualify for such examination.

"(D) Sec. 247(c) If a promotional examination is not held and there are less than two eligibles employed by a given department and willing to compete, an open competitive examination may be scheduled."

On May 7, 1973, the court issued a judgment which embodied these conclusions. The court also ordered that:

"the Defendants herein, in applying the first sentence of Section 247(a) of the Charter, shall construe the word 'practicable' as meaning 'that which may be done, practiced or accomplished; that which is performable, feasible, possible; and the adverb practicably means in a practicable manner.' "

A review of the trial court's rulings requires an interpretation of § 247(a) examined together with subsections (b) and (c) of § 247 and viewed in light of the purposes behind the civil service. Section 247 provides, in pertinent part:

"(a) *Civil service commission to rule on promotional tests. Vacancies in higher positions in the classified service shall be filled so far as practicable by the promotion or advancement of employees in the service.* The civil service commission *shall in each case determine* whether or not an open competitive fitness test shall be held or whether a promotional test shall be conducted among the eligible employees of the department in which a vacancy occurs. The civil service commission shall *also determine* what classes of em-

ployees are eligible to compete for promotion by reason of direct previous experience in work which would be natural preparation for the higher position.

"(b) *Interdepartment advancement.* If, in filling vacancies in a higher position, it is found that there are eligible employees who may be qualified for the work in two or more departments, the civil service commission *may order a competitive examination.* Employees having served six months or more in the department in which the vacancy occurs which would constitute a natural preparation or training for the higher type of employment, and competing in such examination, shall receive an additional credit of ten percent of their passing grade on the training and experience part.

"(c) *Departmental promotions.* The term 'promotional examination' signifies a fitness test to determine the relative standing of applicants for positions in a specified class and open only to employees in the classified service within a given department who have previously served in other specified classes for such a period as may be prescribed by the civil service commission. *Whenever there are two or more persons, all in the same department, eligible and willing to compete for a vacancy in a higher position, the civil service commission may, if it deems that a satisfactory appointee can be obtained in this manner, hold a promotional examination,* in which case only the name of the person having the highest rating shall be certified to the appointing authority. *If a promotional examination is not held and there are less than two eligibles employed by a given department and willing to compete, an open competitive examination may be scheduled,* or in exceptional cases, the civil service commission may authorize the promotion without competition of such eligible person * * * ." (Emphasis supplied.)

On appeal, plaintiffs' reasoning parallels that of the trial court. Plaintiffs define "practicable" as meaning "possible". Under this definition, once there are two or more eligible in-service employees who desire to compete for the vacant position, the

commission has no discretion in choosing the type of examination.

Defendants contend that § 247 states a preference for filling vacancies by promotion, but that this preference is directory, not mandatory. They argue that the determination of practicability is up to the discretion of the commission and that, regardless of the number of eligibles, a promotional exam is practicable only when the commission ascertains that the vacancy can be best filled in that way.

While this matter is one of first impression in this jurisdiction, a number of other jurisdictions have considered the problem. The general rule developed by those opinions is that the decision as to open or promotional exam is a discretionary one:

"Decisions of civil service commissions to hold open competitive examinations instead of merely promotion examinations will not be reversed by the courts absent proof that the administrative decision is illegal, unreasonable, arbitrary or capricious." 2A Antieau, Municipal Corporation Law, § 22.04, p 223.

See also *Short v Kissinger,* 184 Neb 491; 168 NW2d 917 (1969), *Camfield v Mealy,* 288 NY 149; 42 NE2d 9 (1942), *Hewitt v State Civil Service Commission,* 114 Colo 561; 167 P2d 961 (1946), *Flanagan v Department of Civil Service,* 29 NJ 1; 148 A2d 14 (1959), *Timmins v Civil Service Commissioners,* 276 Mass 142; 177 NE 1 (1931). This discretion is limited by the requirement that promotional examinations be held where practicable. *Allen v McKinley,* 18 Cal 2d 697; 117 P2d 342 (1941). Where courts have held that discretion has been abused, they have often based their holding on a large number of employees available for

promotion, *Allen v McKinley, supra, Ptacek v People ex rel Deneen,* 194 Ill 125; 62 NE 530 (1901), and a past history of using promotional exams for the challenged position, *Stagge v City Service Commission of Baltimore City,* 217 Md 466; 143 A2d 502 (1958).

Open competitive examinations are generally favored where the position to be filled is one with unique duties, one where the duties of inferior positions do not reasonably prepare an employee for the vacant, superior position. *Amerio v City and County of San Francisco,* 126 Cal App 2d 359; 271 P2d 996 (1954). See also Rhyne, Municipal Law, § 8-46, p 194. Promotional examinations seem to be favored in positions where a particular type of professional experience and expertise is required. The best examples in this category are fire departments, *Stagge v City Service Commission of Baltimore City, supra,* police departments, and street cleaning departments, *People ex rel Williams v Errant,* 229 Ill 56; 82 NE 271 (1907). The inherent conflict in such cases is between a desire to increase the efficiency of civil servants by ensuring that promotion will result from continued, faithful service and a desire to obtain the widest available field of applicants from which the best person for the position may be obtained.

We consider appeals from cases in equity on a *de novo* basis. *Cerling v Hedstrom,* 51 Mich App 338; 214 NW2d 904 (1974). Our examination of the record convinces us that the trial court erred in its interpretation of § 247. We hold, as have sister jurisdictions, that the commission has a limited discretion in determining whether a vacancy should be filled by promotional or open competitive examination. This discretion is limited by the requirement that a promotional exam be given

where practicable. We hold further that the trial court erred in making the giving of a promotional exam mandatory whenever there are two or more in-service employees eligible and willing to take it. Rather than being decisive, the number of eligible employees is a factor which the commission must consider in making its decision as to whether a promotional exam is practicable. This decision is also one consigned to the commission's discretion.

In addition, we hold that the commission shall for most, but not all, vacancies determine the number of employees willing and eligible to take a promotional examination. Where it is clear from a comparison of requirements of the vacant position with job descriptions for other positions that no other positions in the civil service provide the requisite experience, the commission may decide to hold an open competitive exam without first determining how many eligible in-service employees desire to compete for the opening.

Important to our decision is our finding that the trial court incorrectly defined the term "practicable". By defining "practicable" as "possible", the court reduced the commission's determination of whether a promotional exam is practicable to merely ascertaining whether there are two or more eligible employees. The trial court took its definition of "practicable" from Black's Law Dictionary. We believe that § 247 itself contains a definition more appropriate to this case. In subsection (a), it provides that a promotional exam be held if "practicable." In subsection (c) it then defines "practicable" by stating that a promotional examination be held "if [the commission] deems that a satisfactory appointee can be obtained in this manner". This definition manifests the discretion given the commission in deciding what type of examination will be held.

Further evidence of the commission's discretion is demonstrated by the use in § 247 of the words "shall" and "may". "Shall" is generally used to designate a mandatory provision while "may" designates a provision which grants discretion. *Southfield Township v Drainage Bd for Twelve Towns Relief Drains,* 357 Mich 59; 97 NW2d 821 (1959), *McLogan v Craig,* 20 Mich App 497; 174 NW2d 166 (1969). The Flint Charter, in § 247(a), speaks in mandatory language in requiring that vacancies "shall be filled so far as practicable" by promotion, and that the commission "shall in each case determine" whether to hold a promotional or open competitive exam and "shall also determine what classes of employees are eligible to compete for promotion". However, when the charter describes how the type of exam should be determined, its language states choices, not mandatory requirements. In subsection (b) of § 247, it provides that, where eligible employees in two or more departments wish to compete, the commission *"may* order a competitive exam". (Emphasis supplied.) In subsection (c), "Whenever there are two or more persons, all in the same department, eligible and willing to compete * * * the civil service commission *may,* if it deems that a satisfactory appointee can be obtained in this manner, hold a promotional examination". (Emphasis supplied.) Subsection (c) also provides:

"If a promotional examination is not held and there are less than two eligibles employed by a given department and willing to compete, an open competitive examination *may be scheduled,* or in exceptional cases, the civil service commission *may authorize* the promotion without competition of such eligible person * * * ." (Emphasis supplied.)

The court relied on this last provision in holding that an open competitive exam can be given only when there are less than two eligibles willing to take a promotional exam. We disagree. We read that sentence not as stating the only time an open competitive exam can be given but as providing the only time a vacancy may be filled without any examination. Section 247(a), thus, requires the commission to choose the type of exam. Section 247(c) then describes what choices are available: when there are two or more eligibles, promotional or open competitive; when there is only one available, open competitive or promotion without exam.

Our holding that the commission's discretion is broader than that adjudged by the trial court is bolstered by the charter provisions which give the commission broad power to set job qualifications. Under charter § 236, the commission is responsible for establishing the minimum qualifications, duties and responsibilities for all positions in the classified service. Section 247(a) mandates that, for every vacancy:

"The civil service commission shall * * * determine what classes of employees are eligible to compete for promotion by reason of direct previous experience in work which would be natural preparation for the higher position."

Because of their expertise, civil service commissions have historically been granted extremely broad discretion in making these decisions. *Amerio v City and County of San Francisco, supra.*

It would be incongruous to hold that the commission, by virtue of its expertise, is given broad responsibility and discretion to establish qualifications for all positions in the civil service and to determine what classes can compete for promotion,

but that it has no discretion in determining how one of these positions should be filled when it becomes vacant.

Having held that the selection of promotional or open competitive exam is a matter consigned to the commission's discretion, we must determine whether that discretion was validly exercised in this case. The party challenging a discretionary decision of an administrative body must show that the decision was arbitrary, unreasonable, capricious or an abuse of discretion. *Barry v Flint Fire Dept,* 44 Mich App 602, 607; 205 NW2d 627 (1973). See also 2 Cooper, State Administrative Law, p 758.[1]

Plaintiffs claim, as some cases have held, that the very existence of willing and eligible employees presents a prima facie case of abuse, one which shifts the burden of proof to the civil service

[1] This Court in *Barry v Flint Fire Dept,* 44 Mich App 602, 607; 205 NW2d 627 (1973), established the broad standard that:

"Judicial review of municipal administrative decisions is limited to questions of want of jurisdiction, fraud, bad faith, arbitrariness, or abuse of discretion. *O'Connell v Dearborn Police Fire Pension Board,* 334 Mich 208 [54 NW2d 301] (1952)."

This standard is not applicable to all municipal administrative decisions, only to those deemed "administrative" or "executive". Where a municipal administrative agency acts in a "judicial" or "quasi-judicial" capacity, a reviewing court must ask whether the decision was "supported by competent, material and substantial evidence". Const 1963, art 6, § 28, *Detroit v General Foods Corp,* 39 Mich App 180, 190; 197 NW2d 315 (1972).

The question of which determinations are "executive" and which are "judicial" has long troubled courts. See *Regents of the University of Michigan v Employment Relations Commission,* 389 Mich 96; 204 NW2d 218 (1973). In general, where an agency is called upon to make a decision affecting the rights of specific individuals, its action is judicial. Demotion, firing, and compensation are examples. Const 1963, art 6, § 28 considers a matter to be judicial whenever by law, it requires a hearing to be held.

Where, as here, the decision does not deal with specific individuals, is a matter requiring specific agency expertise, and is made discretionary by law, it is generally held to be "administrative" or "executive". *See generally* MCLA 24.306; MSA 3.560(206), 1 Cooper, State Administrative Law, p 91.

commission. *Rhodehamel v Civil Service Board of Oakland,* 18 Cal 2d 709; 117 P2d 349 (1941). *Cf. Wilson v Ostly,* 173 Cal App 2d 78; 343 P2d 349 (1959). These cases are based on the theory that the determination that an employee is eligible entails a finding that his experience has prepared him for the superior position. A significant number of eligibles thus is a strong indication that the vacancy be filled by a promotional exam. We do not believe, however, that this indication should be exalted to the status of a prima facie case. Where an exercise of administrative discretion is challenged, the burden of proof has always remained with the challenging party. This is the essence of a statutory grant of discretion. This grant is based on a desire to give the agency flexibility in acting and involves a general freedom from judicial interference, *Hunn v Madison Heights,* 60 Mich App 326, 335; 230 NW2d 414 (1975), and a presumption of validity which a challenging party should bear the burden of overcoming.

In the case of the appointment of Daniel Boggan to Deputy City Manager for Operations, the trial court ruled that, because the commission had not first determined the number of in-service eligibles, the open competitive exam and appointment were invalid. We agree with the trial court that the commission must first determine how many eligible in-service employees wish to compete. The charter provision favoring promotion and the beneficial impact on morale of employees make this clear.

However, we believe that, in a few cases, the commission may determine what kind of exam should be given without first finding out how many employees wish to compete. This case is one of those. One of the reasons for holding an open

competitive exam was that the Deputy City Manager job was a new position involving a combination of three subordinate functions—planning, budgeting and evaluation. The minutes of the April 11, 1972 commission meeting indicate that its director of personnel noted that no such combination of skills presently existed in the city's service.[2] He noted that two other new positions were "more basic classifications" which "some current employees with a little additional effort should be able to perform". Those positions were filled by interdepartmental examinations.

By setting the qualifications for Deputy City Manager as it did, the commission, thus, made the giving of a promotional examination impracticable. As we noted earlier, a vacancy is best filled by promotion where the experience gained in inferior positions is requisite to performance in a superior position. Where no other in-service position reasonably prepares employees to fill a vacancy, there will be, perforce, no employees eligible to compete. Therefore, the real question here is whether the commission abused its discretion in setting the qualifications for the Deputy City Manager vacancy. Plaintiffs do not contend that it did, and we cannot find any abuse. See *Amerio v City and County of San Francisco,* 126 Cal App 2d 359; 271 P2d 996 (1954). Daniel Boggan's appointment was, therefore, validly executed, and the trial court's vacation of his position was in error.

The trial court vacated the two other challenged

---

[2] The commissioners also cited four, more general criteria which they used in deciding what kind of examination should be given:

"1. the aims and objectives of management and particularly, the reorganization of government in the City of Flint and in the City Manager's office.

"2. desire for excellence in government.

"3. desire to comply with an affirmative action program.

"4. past precedents."

positions because it held that the commission had not ascertained the number of willing and eligible employees before giving an open competitive examination. We agree that the commission should have determined how many in-service eligibles wanted to compete for these positions, Director of Community Development and Director of Buildings and Inspections. However, the record indicates that both Mr. Patitucci and Mr. Vyvyan have vacated the challenged positions. There is no evidence concerning how the positions were then filled, nor did plaintiffs challenge, in this case, how they were filled. As such, we find that plaintiffs' challenge of the commission's action in filling these positions presents a moot question, *Detroit v Killingsworth,* 48 Mich App 181; 210 NW2d 249 (1973), *lv den* 390 Mich 790 (1973).

Reversed. No costs, a public question being involved.