DEPARTMENT OF CIVIL RIGHTS *ex rel* STARRLA K CORNELL v
EDWARD A SPARROW HOSPITAL ASSOCIATION

Docket Nos. 56528, 56535. Submitted March 9, 1982, at Lansing.—
Decided September 9, 1982. Leave to appeal applied for.

Starrla K. Cornell, an employee of Edward A. Sparrow Hospital
Association, was discharged for refusing to comply with Spar-
row's newly instituted dress code which required female em-
ployees to wear "nurses uniforms". Male employees were re-
quired only to wear a white lab coat over street clothes. Cornell
filed a complaint with the Michigan Department of Civil
Rights. The Civil Rights Commission issued an order finding
that the dress code constituted unlawful discrimination on the
basis of sex and ordered Sparrow to cease and desist from
enforcing the discriminatory dress code, to reinstate Cornell,
and to compensate her with back pay. Sparrow appealed to
Ingham Circuit Court, which affirmed the commission's finding
of discrimination but reversed the commission's order of back
pay, Robert Holmes Bell, J. The Department of Civil Rights
and complainant Cornell filed separate appeals. The appeals
have been consolidated. *Held:*

1. The trial court did not err in refusing to award back pay.
The statute involved entrusts the awarding of back pay to the
discretion of the trial court. The trial court did not abuse its
discretion.

2. The trial court did not err in not awarding complainant
reasonable attorney fees.

Affirmed.

MACKENZIE, J., dissented. She would hold that, once unlawful
discrimination has been found, back pay should be denied only

REFERENCES FOR POINTS IN HEADNOTES

[1] 15 Am Jur 2d, Civil Rights § 431.
[2, 6] 15 Am Jur 2d, Civil Rights § 433.
[3] 20 Am Jur 2d, Costs § 72.
[4] 15 Am Jur 2d, Civil Rights § 446.
[5] 73 Am Jur 2d, Statutes §§ 22-25.
[7]15 Am Jur 2d, Civil Rights § 435.
[8] 16A Am Jur 2d, Constitutional Law § 738.
[9] 22 Am Jur 2d, Damages §§ 30, 32.

for reasons which would not frustrate the purposes of the fair employment practices act, *i.e.,* the eradication of discrimination in employment and the making whole of persons who suffered injury through discrimination in employment. The circuit court's reasoning for denying back pay in this case would frustrate those purposes. The circuit court committed an error of fact and of law by denying back pay on the ground that there had been no showing of purposeful discrimination, and basing a decision on such error amounts to an abuse of discretion. She would reverse and reinstate the order of the Civil Rights Commission in regard to back pay.

OPINION OF THE COURT

1. CIVIL RIGHTS — UNFAIR EMPLOYMENT PRACTICES — EMPLOYEE REINSTATEMENT — BACK PAY.

An employee who has been the subject of any unfair employment practice may be reinstated to his or her position with or without back pay under the provisions of the Michigan State Fair Employment Practices Act (MCL 423.307[h]; MSA 17.458[7][h]).

2. CIVIL RIGHTS — MICHIGAN STATE FAIR EMPLOYMENT PRACTICES ACT — DISCRIMINATION — BACK PAY.

The Michigan State Fair Employment Practices Act, in a case where an employee was discriminatorily discharged, does not mandate a presumption that an award of back pay is to be made in the absence of special circumstances justifying denial of the award; the statute entrusts the awarding of back pay to the discretion of the trial court (MCL 423.301 *et seq.;* MSA 17.458[1] *et seq.).*

3. ATTORNEY AND CLIENT — ATTORNEY FEES.

Generally, a party must bear the burden of his or her own attorney fees unless allowance of a fee is expressly authorized by statute or court rule.

4. CIVIL RIGHTS — MICHIGAN STATE FAIR EMPLOYMENT PRACTICES ACT — ATTORNEY FEES.

The Michigan State Fair Employment Practices Act does not provide for an award of attorney fees to a prevailing complainant.

DISSENT BY MACKENZIE, J.

5. WORDS AND PHRASES — "SHALL" — "MAY" — STATUTORY CON-
    STRUCTION.
    Use of the term "shall" ordinarily indicates a mandatory provi-
    sion of a statute while use of the term "may" indicates a
    provision which grants discretion.

6. CIVIL RIGHTS — MICHIGAN STATE FAIR EMPLOYMENT PRACTICES ACT
    — DISCRIMINATION — BACK PAY.
    *Back pay should be denied to an employee who is reinstated to
    his or her job after a finding of unlawful discrimination on the
    part of the employer in violation of the Michigan State Fair
    Employment Practices Act only where the purposes of the act,
    i.e., the eradication of discrimination in employment and the
    making whole of persons who suffered injury through discrimi-
    nation in employment, would not be frustrated in doing so
    (MCL 423.301 et seq.; MSA 17.458[1] et seq.).*

7. CIVIL RIGHTS — MICHIGAN STATE FAIR EMPLOYMENT PRACTICES ACT
    — BACK PAY.
    *The Michigan State Fair Employment Practices Act does not
    require a showing of bad faith or purposeful discrimination on
    the part of an employer in discharging an employee before an
    award of back pay may be ordered (MCL 423.301 et seq.; MSA
    17.458[1] et seq.).*

8. WORDS AND PHRASES — "INVIDIOUS DISCRIMINATION".
    *"Invidious discrimination", a term of art found in equal protec-
    tion cases, refers to a classification that is arbitrary, irrational,
    and not reasonably related to a legitimate purpose.*

9. CIVIL RIGHTS — MASTER AND SERVANT — WRONGFUL DISCHARGE —
    MITIGATION OF DAMAGES.
    *The duty to make reasonable efforts to mitigate damages does not
    require that an employee surrender to her employer's unlawful
    demands to prevent her employer from wrongfully discharging
    her.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Michael A. Lockman* and *Jack Blumenkopf,* Assistants Attorney General, for Department of Civil Rights.

*H. James Starr,* for Starrla Cornell.

*Foster, Swift, Collins & Coey, P.C.* (by *John L. Collins, George M. Brookover* and *Frank J. Nerat, Jr.),* for Edward A. Sparrow Hospital Association.

Before: M. J. Kelly, P.J., and T. M. Burns and MacKenzie, JJ.

Per Curiam. Starrla K. Cornell and the Michigan Department of Civil Rights appeal as of right a February 15, 1981, lower court order affirming an order of the Civil Rights Commission, which found respondent's dress code to be discriminatory against women employees and which reversed the commission insofar as it awarded back pay to Cornell.

Cornell was employed by the respondent hospital from July 1, 1972, to May 3, 1976, when she was discharged for refusing to comply with respondent's dress code. The dress code, which was instituted on May 1, 1976, required female employees to wear "nurses uniforms" including white shoes and certain colors of undergarments. Male employees, however, were required only to wear a white lab coat over street clothes. When Cornell refused to conform her appearance to the provisions of the dress code, she was discharged.

Cornell filed a complaint with the Michigan Department of Civil Rights. Following investigation and hearings, the commission issued a final order on May 23, 1978, finding that the dress code constituted unlawful discrimination on the basis of sex in violation of the Michigan State Fair Employment Practices Act, MCL 423.301 *et seq.;* MSA 17.458(1) *et seq.* The commission ordered respondent to cease and desist from enforcing the discriminatory dress code, to reinstate Cornell, and to compensate her with back pay.

Respondent appealed to the circuit court, which

in an opinion dated October 3, 1980, affirmed the commission's finding of discrimination. However, the circuit court reversed the commission's order of back pay. Appellants now appeal as of right.

Initially, we hold that the lower court did not err in refusing to award Cornell back pay. Pursuant to the provisions of MCL 423.307(h); MSA 17.458(7)(h), an employee who has been the subject of any unfair employment practice may be reinstated to his or her position "with or without back pay". Cornell has clearly been discriminated against. As the dissent points out, respondent's practice was based on sexual stereotyping. However, contrary to appellants' position, the Michigan statute does not mandate a presumption that an award of back pay is to be made where a claimant was discriminatorily discharged unless special circumstances justify denial of the award. Although there is some federal authority supporting such an interpretation of the federal Civil Rights Act of 1964, 42 USC 2000e-2 *et seq.;* see *Albemarle Paper Co v Moody,* 422 US 405; 95 S Ct 2362; 45 L Ed 2d 280 (1975), the applicable provisions of the Michigan statute clearly make an award of back pay discretionary. We cannot rewrite the statute to legislate the presumption that appellants advocate or to create the "special circumstances" that would justify a denial of back pay.

The statute entrusts the awarding of back pay to the trial court's discretion. Even though respondent's policy discriminated against women, it did not deny employment or anything else so egregious. Although we sympathize (and we trust that respondent has permanently ended the practice), we do not believe that the practice was so invidious that Cornell could not reasonably have contin-

ued working for respondent while at the same time challenging the policy in court. Although we may have decided differently, we do not believe that the trial court abused its discretion in refusing to award back pay.

Cornell next argues that the trial court erred in not awarding her reasonable attorney fees.

In general, a party must bear the burden of his or her own attorney fees "unless allowance of a fee is expressly authorized by statute or court rule". *State Farm Mutual Automobile Ins Co v Allen,* 50 Mich App 71, 74; 212 NW2d 821 (1973). Cornell argues that she is entitled to reasonable attorney fees in accordance with § 802 of the Elliott-Larsen Civil Rights Act, MCL 37.2802; MSA 3.548(802). That statute provides:

"A court, in rendering a judgment in an action brought pursuant to this article, may award all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, to the complainant in the action if the court determines that the award is appropriate."

Cornell's case was not "an action brought pursuant to" the Elliott-Larsen Civil Rights Act. That act was not in effect at the time that Cornell was wrongfully discharged by respondent nor was it in effect at the time that Cornell filed her complaint with the Civil Rights Commission. The statute under which Cornell initiated this suit was the Michigan State Fair Employment Practices Act, MCL 423.301 *et seq.;* MSA 17.458(1) *et seq.* The Michigan State Fair Employment Practices Act does not provide for an award of attorney fees to a prevailing complainant. Therefore, because there is no statutory or court rule authority authorizing

an award of attorney fees in this case, the trial court correctly declined to award them.

Affirmed.

MACKENZIE, J. *(dissenting)*. I respectfully dissent. I agree with the majority's resolution of the issue concerning attorney fees but cannot agree with the majority's resolution of the issue concerning back pay.

Claimant brought this proceeding under the former Michigan State Fair Employment Practices Act, 1955 PA 251; MCL 423.301 *et seq.;* MSA 17.458(1) *et seq.* The former act was repealed by 1976 PA 453, effective March 31, 1977, which also enacted what is now the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.* The issue concerning back pay turns on the following provision of the former act, MCL 423.307(h); MSA 17.458(7)(h):

"If, upon the preponderance of the evidence on the record considered as a whole, the commission shall determine that the respondent has engaged in or is engaging in any unfair employment practice, the commission shall state its findings of fact and shall issue and cause to be served on such respondent an order requiring such respondent to cease and desist from such unfair employment practice and to take such further affirmative or other action as will effectuate the purposes of this act, including, but not limited to, hiring, reinstatement or upgrading of employees with or without back pay, or admission or restoration to union membership, including a requirement for reports of the manner of compliance. Upon the submission of such reports of compliance, the commission may issue a declaratory order stating that respondent has ceased to engage in unfair employment practices."

Federal courts have had a much greater oppor-

tunity to review questions concerning discrimination in employment than have state courts. Consequently, federal precedent dealing with such questions is highly persuasive, although not necessarily controlling in view of the differences in the state and federal statutory schemes. See *Civil Rights Comm v Chrysler Corp,* 80 Mich App 368, 375, fn 4; 263 NW2d 376 (1977). 42 USC 2000e-5(g) provides:

"If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable. No order of the court shall require the admission or reinstatement of an individual as a member of a union, or the hiring, reinstatement, or promotion of an individual as an employee, or the payment to him of any back pay, if such individual was refused admission, suspended, or expelled, or was refused employment or advancement or was suspended or discharged for any reason other than discrimination on account of race, color, religion, sex, or national origin or in violation of section 2000e-3(a) of this title."

The majority attempts to distinguish the state and federal statutes on the ground that the state statute makes an award of back pay discretionary.

Clearly, however, the same may be said of the federal statute. In *Albemarle Paper Co v Moody*, 422 US 405, 421; 95 S Ct 2362; 45 L Ed 2d 280 (1975), the Court recognized that an award of back pay under the federal statute was discretionary but held that such discretion must be exercised in light of the purposes of the statute:

"* * * Congress' purpose in vesting a variety of 'discretionary' powers in the courts was not to limit appellate review of trial courts, or to invite inconsistency and caprice, but rather to make possible the 'fashion[ing] [of] the most complete relief possible.

"It follows that, given a finding of unlawful discrimination, backpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." (Footnote omitted.)

The parties and the majority regard *Albemarle* as creating a presumption in favor of back pay; however, the case is better characterized as creating a standard for determining whether discretion in regard to back pay has been abused.

A comparison of the language used in the state and federal statutes shows that the case for a result such as the Court reached in *Albemarle* is more compelling under the state statute than under the federal statute. Ordinarily, "shall" indicates a mandatory provision while "may" indicates a provision which grants discretion. *Law Dep't Employees Union v Flint*, 64 Mich App 359, 368; 235 NW2d 783 (1975). The state statute uses the mandatory "shall" to require the commission to issue an order which requires respondent to take such action as will effectuate the purpose of the statute. As was the case with the federal statute,

the various powers granted the commission were not intended to enable the commission to reach inconsistent and capricious results but rather to enable the commission to fashion a remedy in view of the particular facts before it to carry out the purposes of the statute. It cannot be seriously disputed that the state statute, like the federal statute, includes among its purposes the eradication of discrimination in employment and the making whole of persons who suffered injury through discrimination in employment. I would therefore hold that, given a finding of unlawful discrimination, back pay should be denied only for reasons which, if applied generally, would not frustrate the statutory purposes.

In his opinion, the circuit judge explained his denial of back pay as follows:

"Although this court has found that the respondent's dress code was discriminatory based upon sex, as well as a condition of employment, these violations must be put into proper perspective. The dress code, as instituted, does not amount to such purposeful and invidious discrimination as to prohibit the attainment of gainful employment. This is not the type of discrimination that has been so historically rampant that denied an individual of any employment opportunities. At most, this court believes that the respondent has exercised poor judgment in the establishment of such a code."

The circuit judge explained his ruling as follows in the course of a hearing on claimant's motion for reconsideration:

"See when the court made its ruling the court has before it not that question to consider, the court had before it whether or not there had been error in this particular case, whether the board commission [sic] as an agency had errored [sic] in its finding of fact and law

and this court ruled that based upon the record that
there had not been error as it related to discrimination;
however, the court went further in the findings based
on that record to show that based upon those findings
there was no showing of that type of invidious and
purposeful discrimination such as to prohibit the attain-
ment of gainful employment. Now my opinion was this.
Under the law, and I've had, you have to appreciate
I've had many cases since this time, so my memory has
to go back, the law as I understand it is that where the
person is discriminatorily denied employment then the
Civil Rights Commission has the power to reorder the
reinstatement with back wages et cetera, et cetera by
way of damages, but I made a ruling based upon the
record here that this person was not denied gainful
employment, this person purposefully disobeyed the
discriminatory dress code to, I believe, the extent it was
two or three days she appeared in a row without the
appropriate quote unquote dress on or uniform on or
condition of employment, however you view it such that
she was eventually terminated. So that she had a right
to gainful employment but that action which she took
foreclosed that gainful employment, therefore I ordered
that the Civil Rights Commission factually errored [sic]
in determining that she should be given damages. I
mean common sense dictates that she could have con-
tinued in her employment and brought the lawsuit,
filed the complaint with the Civil Rights Commission,
she could have litigated this matter while she was
dressed in the 'uniform' as required all the while argu-
ing that it was an unconstitutional discrimination. She
elected to foreclose herself from employment and ac-
cordingly that is the issue the court dealt with."

The circuit judge's reasoning, if applied gener-
ally, would frustrate the statutory purposes of
eradication of discrimination in employment and
the making whole of persons who suffered such
discrimination. The circuit judge found the dress
code to be discriminatory and that finding has not
been challenged on appeal. Under the Michigan
State Fair Employment Practices Act, claimant

had a right to employment free from discriminatory conditions. Under the act, respondent had a duty not to enforce discriminatory conditions of employment by discharging employees who failed to comply. The circuit judge and the majority apparently believe that there is a class of discriminatory conditions of employment which violate the act but which are insufficiently serious to justify noncompliance by an employee. No authority has been cited to support that position because none exists. If the discriminatory condition of employment at issue here was insufficiently serious to justify noncompliance by claimant, why was it sufficiently serious to justify respondent in discharging claimant for noncompliance?

Implicit in the opinion of the circuit judge and the majority opinion is the view that a reasonable person (or, more precisely, a reasonable woman) should be able to endure being forced to wear a badge of inferiority. I have little doubt that greater concern would be accorded to a member of a racial or religious minority whose employer required as a condition of employment the wearing of a costume reinforcing offensive racial or religious stereotypes. The majority opinion simply distinguishes, without analysis, between "egregious" and "non-egregious" discrimination. What basis such a distinction has in the statutory policies of eradicating discrimination and of making persons whole for injuries suffered through past discrimination eludes this writer. The only apparent basis for such a distinction here is a value judgment that sexual discrimination is less serious than other forms of discrimination. Such a value judgment is fundamentally inconsistent with the statute.

I am at a loss to explain the circuit judge's

finding that the discrimination involved in the dress code did not amount to purposeful and invidious discrimination. Respondent's laboratory director was asked to explain the differences between the dress codes for men and women and testified as follows:

"*Q.* All right. Is there any job in the laboratory that would—is there any justification in the lab job that would indicate the difference?

"*The Witness:* I guess that really, you know, depends on the broad interpretation of what he's asking me. Do you want me to—my gut response to that?

"*Hearing Officer:* Well, yes.

"*Mr. Starr [counsel for claimant]:* I'll ask you to give your gut response, and we'll go from there.

"*Hearing Officer:* Go.

"*The Witness:* Well, you know, I think that one of the responsibilities that we have in the laboratory or anybody in health care and delivery is that patients expect a certain professional appearance. May I finish?

"*Q. [by Mr. Starr, continuing]:* Yes.

"*A.* And, you know, they are used to seeing physicians—they're essentially male—dressed very much as it's described here under Male Dress Code. That is something they expect. They don't expect the same thing in nurses or medical technologists. I would just— that's just my first gut response."

In short, respondent wanted its male medical technologists to have the professional appearance a patient would expect of a doctor. A female medical technologist who, like claimant, dressed in the fashion a patient would expect of a doctor thereby violated the dress code. Female medical technologists were required to dress like nurses. The laboratory director's testimony shows an intent to reinforce sexual stereotypes and therefore shows purposeful discrimination. No other testi-

mony as to the purpose of the differences between the dress codes for men and women was offered.

Moreover, in *Albemarle, supra,* 422-423, the Court rejected a contention that back pay could be awarded only upon a showing of "bad faith":

"This is not a sufficient reason for denying backpay. Where an employer *has* shown bad faith—by maintaining a practice which he knew to be illegal or of highly questionable legality—he can make no claims whatsoever on the Chancellor's conscience. But, under Title VII, the mere absence of bad faith simply opens the door to equity; it does not depress the scales in the employer's favor. If backpay were awardable only upon a showing of bad faith, the remedy would become a punishment for moral turpitude, rather than a compensation for workers' injuries. This would read the 'make whole' purpose right out of Title VII, for a worker's injury is no less real simply because his employer did not inflict it in 'bad faith'. Title VII is not concerned with the employer's 'good intent or absence of discriminatory intent' for 'Congress directed the thrust of the Act to the *consequences* of employment practices, not simply the motivation.' *Griggs v Duke Power Co* [401 US 424, 432; 91 S Ct 849; 28 L Ed 2d 158 (1971)]. See also *Watson v Memphis* [373 US 526, 535; 83 S Ct 1314; 10 L Ed 2d 529] (1963); *Wright v Council of City of Emporia* [407 US 451, 461-462; 92 S Ct 2196; 33 L Ed 2d 51] (1972). To condition the awarding of backpay on a showing of 'bad faith' would be to open an enormous chasm between injunctive and backpay relief under Title VII. There is nothing on the face of the statute or in its legislative history that justifies the creation of drastic and categorical distinctions between those two remedies." (Footnotes omitted; emphasis in original.)

I believe the language of the Michigan State Fair Employment Practices Act and the policies underlying the act mandate a similar result. Thus, even assuming that the circuit court did not commit clear error in holding that respondent's dis-

crimination was not purposeful, such a holding would at best open the door to the exercise of discretion under the standard discussed above. The circuit court committed an error of fact and of law by denying back pay on the ground that there had been no showing of purposeful discrimination.

Respondent relies on *Manning v International Union,* 466 F2d 812 (CA 6, 1972), and *Kober v Westinghouse Electric Corp,* 480 F2d 240 (CA 3, 1973). In those cases, back pay was denied because the employers' discriminatory policies were required by state statute. No comparable justification for respondent's discriminatory policy appears here.

"Invidious discrimination" is a term of art found in equal protection cases. It refers to a classification that is arbitrary, irrational, and not reasonably related to a legitimate purpose; see *United States ex rel Buonoraba v Comm'r of Correction, City of New York,* 316 F Supp 556, 564 (SD NY, 1970). The most applicable meanings of "invidious" in ordinary usage are "of an unpleasant or objectionable nature", and "causing harm or resentment"; see *Webster's Third New International Dictionary (1968),* p 1190. I cannot see how any discrimination which violates the statute is not "invidious".

Respondent attempts to justify the circuit court's holding by reference to principles of mitigation. Respondent relies on cases brought pursuant to the federal statute such as *Sias v City Demonstration Agency,* 588 F2d 692 (CA 9, 1978). I have no doubt that, in an appropriate case, a claimant might be required to make reasonable efforts to secure alternative employment and thus avoid some of the economic consequences of her employer's wrongful act. Compare, for example, *Shiffer v*

*Gibraltar Bd of Ed,* 393 Mich 190, 196-200; 224 NW2d 255 (1974). However, the duty to make reasonable efforts to mitigate damages does not require that an employee surrender to her employer's unlawful demands to prevent her employer from wrongfully discharging her. See 22 Am Jur 2d, Damages, § 32, p 55:

"The doctrine of avoidable consequences does not include yielding to a wrongful demand by the wrongdoer to save the wrongdoer from the legal consequence of his own error * * *."

I would hold that the circuit court's decision was based on clear error of fact and of law and amounts to an abuse of discretion. I would reverse the circuit court's decision and reinstate the order of the Civil Rights Commission in regard to back pay.