CITY OF AUBURN, Respondent, *v.* EDWARD J. NASH, SR., as President of Cayuga County Chapter of the Civil Service Employees Association, Appellant.

Fourth Department, June 25, 1970.

*George Dacy* for appellant.

*John J. Pettigrass* for respondent.

GOLDMAN, P. J., Appellant, President of the Cayuga County Civil Service Association (CSEA), appeals from an order, which granted the motion of respondent City of Auburn (City), permanently staying arbitration of a grievance of a City employee. It is conceded that the employee fully complied with the prescribed grievance procedures contained in the collective bargaining agreement. Special Term gave as its reason for ordering the stay that " a substantial issue as to the presentation of respondent's request for arbitration of the alleged grievance was not timely under the terms of the collective negotiating agreement * * * and therefore does not present an arbitrable issue under said agreement ". Appellant contends that the issue of compliance with the procedural time limitation should be determined by the arbitrators and not by the court.

We are not here concerned with the short period provided in the agreement in which to demand arbitration, for authorization for such provision is expressly contained in CPLR 201. Limiting the time in which arbitration must be sought is usual in arbitration clauses and, absent any unreasonably harsh or ambiguous requirement, is generally strictly enforced (*Matter of River Brand Rice Mills* v. *Latrobe Brewing Co.,* 305 N. Y. 36; 8 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 7502.15).

The more difficult and critical question here is the forum in which compliance with the time limitation issue is to be determined. The validity of the bargaining agreement is not questioned and is, in fact, admitted by the parties. We are dealing solely with the question of an employee's alleged grievance. The agreement defines a grievance " as a dispute or controversy between an individual employee covered by this Agreement and the Employer * * * or a grievance as defined by Section 682, sub-division 4 of Article 16 of the General Municipal Law ". That law provides in pertinent part that: " Grievance shall mean any claimed violation, misinterpretation or inequitable application of the existing laws, rules, procedures, regulations, administrative orders or work rules of a government or a

department or agency thereof, which relate to or involve * * * employees ". Article IX of the agreement, which incorporates the above and the arbitration procedure, expressly provides that " The purpose of this Article is to provide the sole method for the settlement of grievances ".

If there were any doubt as to the validity of the agreement, it would have to be resolved as a condition precedent to the right to arbitration and, therefore, precedent to " the arbitrator's very jurisdiction " (*Matter of Board of Educ.* [*Heckler Elec. Co.*], 7 N. Y. 2d 476, 481). " It is settled that under a broad provision for arbitration, such as we have here, arbitration may be had as to all issues arising subsequent to the making of the contract. [Citing cases.] " (*Matter of Terminal Auxiliar Maritima* [*Winkler Credit Corp.*], 6 N Y 2d 294, 298.) The more troublesome question is the determination of what constitutes a " condition precedent ". In *Matter of Lipman* (*Haeuser Shellac Co.*) (289 N. Y. 76), the claim of a cancellation of a contract of arbitration was determined to be a question for the arbitrators and not for the court. In the cases where the courts have held that time provisions are " conditions precedent ", and, therefore, to be determined by the court, the agreements make compliance with the time provision a " condition precedent " to arbitration. Cases so holding, at first blush, would appear to support Special Term's decision in the instant case.

In our view, the uncertainties created by such decisions as *Matter of Board of Educ.* (*Heckler Elec. Co.*) (7 N Y 2d 476, *supra*) and similar holdings, were resolved by the Court of Appeals in *Matter of Long Is. Lbr. Co.* (*Martin*) (15 N Y 2d 380). In that case, Special Term and the Appellate Division held that the union was not entitled to arbitrate its claimed grievance. In its opinion of reversal the court laid down positive guidelines and established the principle to be followed in dealing with " procedural arbitrability " in these statements at pages 384 and 385:

" It is now a familiar rule that, where a labor agreement contains an arbitration provision, the presumption is that questions of arbitrability are for the arbitrator (see *Steelworkers* v. *Warrior & Gulf Co.*, 363 U. S. 574 [1960]; *Steelworkers* v. *American Mfg. Co.*, 363 U. S. 564 [1960]; *Steelworkers* v. *Enterprise Corp.*, 363 U. S. 593 [1960]). The principles which have given rise to this presumption as to questions of substantive arbitrability apply likewise to procedural issues. (See *John Wiley & Sons* v. *Livingston*, 376 U. S. 543 [1964]; *Rochester Tel. Corp.* v. *Communications Workers*, 340 F. 2d 237 [2d Cir., 1965]; *Carey* v. *General Elec. Co.*, 315 F. 2d 499, 501–504 [2d Cir.,

1963], cert. den. 377 U. S. 908 [1964]). * * * It is only where the parties have employed language which clearly rebuts the presumption of arbitrability, e.g., by stating that an issue either as to procedure or as to substance is *not* to be determined by arbitration, that the matter may be determined by the courts. * * *

' Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, '' procedural '' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.' (376 U. S., p. 557.) ''

It is significant that in *Rochester Tel. Corp.* v. *Communications Workers* (340 F. 2d 237), cited by the court in the above quotation from *Matter of Long Is. Lbr. Co. (Martin) (supra)*, we have a fact situation similar to the case at bar. In an appeal to the Court of Appeals of the Second Circuit from the summary judgment granted by the District Court, which compelled the employer to arbitrate a grievance arising out of the discharge of an employee, the issue concerned a contract provision requiring notice of intention to arbitrate to be given within 60 days, as compared with 30 days in the instant case. The Second Circuit, in affirming the District Court, refused to decide the merits of the controversy, holding that the matter was one of '' procedural arbitrability '' which should be decided by the arbitrators.

The recent decision in *Mount St. Mary's Hosp. of Niagara Falls* v. *Catherwood* (26 N Y 2d 493) lends further support to our determination. The court was dealing with '' a standard of review sufficient to afford the parties due process in the context of compulsory arbitration as mandated by section 716 of the Labor Law '', as it related to the settlement of disputes in a nonprofitmaking hospital, rather than consensual arbitration provided for by the terms of a collective bargaining agreement. The Court of Appeals reaffirmed the established principle in arbitration matters that '' Parties in voluntary agreement are not limited, except for rare matters contrary to public policy, from agreeing to anything they wish ''. Although speaking in a different context, the court adhered to the principle it asserted in *Matter of Long Is. Lbr. Co. (Martin)* (15 N Y 2d 380, *supra*) that '' the power of exclusive and final determination by the arbitrator covers all issues of law and fact ''.

Although neither party has presented the question of whether the so-called Taylor Law (Public Employees' Fair Employment Act-Civil Service Law, §§ 200–212) has any impact upon the issue before us, we believe it requires our consideration. Arbi-

tration clauses have long been common in private industry agreements for the resolution of grievances, but it has only been in recent years that we have found such provisions in public employment contracts. Binding arbitration clauses are now frequently found in State and local governmental employment agreements, such as in the case at bar. We commend the thorough treatment of the subject of public employment arbitration in 54 Cornell Law Review 129, which focuses quite directly upon this question.

Are collective bargaining agreements providing for arbitration in "minor disputes" enforceable? These disputes concern the interpretation and/or application of the provisions and conditions of a labor contract, including grievance procedures. Earlier decisions have held that contract provisions for arbitration of grievances in public employment were an unlawful delegation of governmental power. (See, e.g., *Norwalk Teachers' Assn.* v. *Board of Educ. of City of Norwalk,* 138 Conn. 269.) More recently, however, such provisions have been upheld. (*Tremblay* v. *Berlin Police Union,* 108 N. H. 416; *Local 1226* v. *City of Rhinelander,* 35 Wis. 2d 209; see, also, 54 Cornell L. Rev. 130–134.) A summary of the cases and statutes indicates that: "there are three preconditions to binding arbitration of minor disputes: a statute enabling collective bargaining by government employees; reasonable standards for arbitration; and limitations of the issues to the ' law of the contract '. In a jurisdiction where the courts have held that it is within the public employer's power to enter into a binding labor contract, despite the absence of such a statute, the conclusion should be the same." (54 Cornell L. Rev. 134.)

New York's Taylor Law (Civil Service Law, § 204, subd. 2) requires a public employer to negotiate with recognized employee organizations in the determination of and administration of grievances arising under the terms and conditions of employment. It also requires public employers to enter into written agreements with employee organizations to determine such terms and conditions. Thus, New York not only authorizes public employers to enter into binding collective agreements, it *requires* that they do so.

The Governor's Committees' Report on the Taylor Law strongly encouraged the use of voluntary terminal arbitration to settle grievances. (See New York Governor's Committee on Public Employee Relations, Final Report, March 31, 1966, p. 45; see, also, 18 Syracuse L. Rev. 257.) The Taylor Law, itself, was recently amended to add to the powers of PERB (Public Employment Relations Board). The board is now authorized

"To establish * * * panels of qualified persons broadly representative of the public to be available to serve as mediators, arbitrators or members of fact-finding boards". (Civil Service Law, § 205, subd. 5, par. [i], amd. by L. 1969, ch. 24). Section 209 of the Civil Service Law, which deals with the resolution of "major disputes", in subdivision 2 specifically provides that the parties may enter into agreements to submit unresolved issues to impartial arbitration. Surely, if the voluntary arbitration of "major disputes" is allowed by the statute, the voluntary arbitration of "minor disputes" is also impliedly proper.

In the recent case of *Central School Dist. No. 1* v. *Litz* (60 Misc 2d 1009, 1011, affd. 34 A D 2d 1092), issues distinctly similar to those in the instant case were raised. The case deals with the applicability of the rule in *Matter of Long Is. Lbr. Co.* (*Martin*) (15 N Y 2d 380, *supra*) to cases involving public employer-employee relations. The court held that "It would fly in the face of the stated policy of the Legislature found in section 200 of the Civil Service Law which encourages grievance and arbitration procedures to hold that the ruling of *Long Is. Lbr. Co.* (*Martin*) (*supra*) was limited to the private sector." The parties also argued that the court could not find a valid agreement to arbitrate because such a contract provision would be an invalid attempt to delegate nondelegable functions of government to a third party who was not responsible to the public. The court rejected the argument and upheld the contract provisions to arbitrate. It concluded that the power to enter into such an agreement was not an illegal delegation of legislative or administrative powers.

Courts have recognized the authority of governmental units to bind themselves to commercial arbitration. Such an exercise of the power to contract implies the power to assent to the settlement of disputes by arbitration. As was said in *Matter of Dormitory Auth.* (*Span Elec. Corp.*) (18 N Y 2d 114, 118), "we hold that the State itself is not insulated against the operation of an arbitration clause in a contract because the power to contract implies the power to assent to the settlement of disputes by means of arbitration [citing cases]".

The Legislature has declared that it is the public policy of New York State and the purpose of the Taylor Law to promote harmonious and co-operative relationships between the government and its employees and to protect the public by assuring, at all times, the orderly and uninterrupted operations of government (Civil Service Law, § 200). The Taylor Law should be construed liberally to carry out its public benefit purposes (*Matter of Civil Serv. Employees Assn.* v. *Helsby*, 31 A D 2d 325).

Voluntary arbitration has long been accepted as a significant and effective method of resolving employer-employee disputes. Collective bargaining arbitration agreements in the public employment sector are valid and the weight of authority would indicate that such agreements, at least as far as "minor disputes" are concerned, are valid and enforceable.

Thus, we find that the Taylor Law adds weight to our determination that the matter should be resolved by the arbitrators. The order should be reversed and the motion to stay arbitration should be denied.

DEL VECCHIO, WITMER, GABRIELLI and BASTOW, JJ., concur.

Order unanimously reversed, with costs, and motion denied.