PONTIAC POLICE OFFICERS ASSOCIATION v CITY OF PONTIAC

Docket No. 56183. Argued June 4, 1975 (Calendar No. 7).—Decided
    November 23, 1976.

The Employment Relations Commission ordered the defendant
    City of Pontiac to bargain in good faith with the plaintiff
    Pontiac Police Officers Association regarding grievance proce-
    dures including a civilian trial board to review charges of police
    misconduct, and a requirement that policemen live within or
    near the city, both of which are the subject of city charter
    provisions. The Court of Appeals, Lesinski, C. J., and R. B.
    Burns and Quinn, JJ., reversed (Docket No. 14843). The Su-
    preme Court *sua sponte* reversed the decision, held that resi-
    dency was a mandatory subject of collective bargaining, and
    remanded for reconsideration of the civilian trial board issue.
    391 Mich 814 (1974). The Court of Appeals upon remand held
    that the civilian trial board issue is a permissive subject of
    collective bargaining. 54 Mich App 282; 220 NW2d 794 (1974).
    Plaintiff appeals. Justice Levin, joined by the Chief Justice,
    wrote an opinion which developed the holding of the Court.
    Justice Coleman, joined by Justices Fitzgerald and Lindemer,
    concurred in the holding but found Justice Levin's reasoning
    too broad and susceptible of applications to which they would
    not subscribe. Justice Williams concurred in the holding but
    reserved consideration of whether the particular type of arbi-
    tration in question is permissible. *Held:*

    1. Grievance and other disciplinary procedures are "other
    terms or conditions of employment" within the meaning of the
    public employment relations act (PERA), and grievance and
    disciplinary procedures for police officers are subjects of manda-
    tory collective bargaining under the statute.

    2. The duty to bargain collectively on such issues and to
    perform in accordance with the collective bargaining agree-
    ment prevails over conflicting provisions of the charter of a
    home-rule city.

    The decision of the Court of Appeals is reversed.
    54 Mich App 282; 220 NW2d 794 (1974) reversed.

REFERENCES FOR POINTS IN HEADNOTES
[1, 3–8] 48 Am Jur 2d, Labor and Labor Relations § 1191 *et seq.*
[2] 48 Am Jur 2d, Labor and Labor Relations §§ 246, 1191, 1193.

Separate Opinion

Kavanagh, C. J., and Levin, J.

1. Labor Relations—Municipal Corporations—Disciplinary Procedures—Public Employment—Collective Bargaining.

Grievance and other disciplinary procedures for public employees are "other terms and conditions of employment" and thus mandatory subjects of collective bargaining within the meaning of the public employment relations act (MCL 423.201 *et seq.;* MSA 17.455[1] *et seq.).*

2. Labor Relations—Public Employment—Police Officers.

Police officers are public employees within the definition of the public employment relations act and the state Constitution (Const 1963, art 4, § 48; MCL 423.201 *et seq.;* MSA 17.455[1] *et seq.).*

3. Labor Relations—Public Employment Relations Act.

*The public employment relations act is the dominant law regulating public employee labor relations (Const 1963, art 4, § 48; MCL 423.201 et seq.; MSA 17.455[1] et seq.).*

4. Labor Relations—Municipal Corporations—Disciplinary Procedures—Collective Bargaining.

*The duty of a public employer to bargain collectively on issues of grievance and disciplinary procedures and to perform in accordance with the terms of a collective bargaining agreement under the public employment relations act prevails over conflicting permissible provisions of the charter of a home-rule city for a civilian trial board to review charges of police misconduct unless the duty to bargain has been demonstrated to frustrate the exercise of a constitutional power (MCL 423.201 et seq., 771.10; MSA 17.455[1] et seq., 28.1140).*

5. Labor Relations—Public Employment—Disciplinary Procedures—Collective Bargaining—Policy.

*The Supreme Court cannot decide ad hoc that disciplinary procedure is not a subject of mandatory bargaining as applied to a particular employer although it continues to be mandatory for other employers; the Legislature has the prerogative to consider claims by public employers that the scope of the collective bargaining obligation impinges unduly on their power to govern.*

Opinion by Levin, J.

Concurring Opinion

Coleman, Fitzgerald, and Lindemer, JJ.

See headnote 1.

6. Labor Relations—Municipal Corporations—Disciplinary Pro-
   cedures—Collective Bargaining.
   The duty of a public employer to bargain collectively on issues of
   grievance and disciplinary procedures and to perform in accord-
   ance with the terms of a collective bargaining agreement under
   the public employment relations act prevails over conflicting
   permissible provisions of the charter of a home-rule city for a
   civilian trial board to review charges of police misconduct
   (MCL 423.201 *et seq.,* 771.10; MSA 17.455[1] *et seq.,* 28.1140).

Concurring Opinion

Williams, J.

7. Labor Relations—Municipal Corporations—Collective Bar-
   gaining.
   *The duty of a public employer to bargain collectively under the*
   *public employment relations act supersedes the home-rule pow-*
   *ers of cities relative to the terms and conditions of public*
   *employment (MCL 423.201 et seq.; MSA 17.455[1] et seq.).*

8. Labor Relations—Municipal Corporations—Arbitration—Pub-
   lic Employment Relations Act—Collective Bargaining.
   *Arbitration is another term and condition of employment and*
   *thus a mandatory subject of collective bargaining within the*
   *meaning of the public employment relations act (MCL 423.201*
   *et seq.; MSA 17.455[1] et seq.).*

*Gregory, Van Lopik & Higle* (by *J. Douglas*
*Korney)* for Pontiac Police Officers Association.

*Tolleson, Burgess & Mead* (by *Douglas C. Dahn)*
for City of Pontiac.

*Frank J. Kelley,* Attorney General, *Robert A.*
*Derengoski,* Solicitor General, and *Francis W. Ed-*
*wards,* Assistant Attorney General, for Employ-
ment Relations Commission.

Levin, J. The issue on this appeal is whether

grievance and disciplinary procedures are "other terms and conditions of employment" within the meaning of the public employment relations act (PERA)[1] and, if so, whether the provisions of the PERA concerning the duty to bargain collectively prevail over the provisions of the charter of a home-rule city providing for a civilian trial board to review charges of police misconduct.

We hold that grievance and other disciplinary procedures are "other terms and conditions of employment" within the meaning of the PERA and that the duty to bargain collectively on such issues and to perform in accordance with the terms of a collective bargaining agreement prevails over conflicting provisions of the charter of a home-rule city.

I

The Pontiac City Charter provides for a civilian trial board to review charges of police misconduct and, where necessary, impose discipline, including discharge.

The city, invoking the charter provision, refused to bargain with the Pontiac Police Officers Association (the union), the representative of the policemen, regarding grievance procedures for disciplined policemen. Similarly, because the city charter contains a requirement that policemen live within or near the city, the city refused to bargain regarding residency.

The union filed an unfair labor practice charge with the Michigan Employment Relations Commission (MERC). The MERC concluded that both employee discipline and residency were mandatory

---

[1] MCLA 423.201, *et seq.;* MSA 17.455(1), *et seq.*

subjects of collective bargaining and that the city's refusal to bargain was an unfair labor practice.

The Court of Appeals[2] concluded that "the management, operation and control of [a] police department" is "a municipal concern",[3] "a matter of local concern to be resolved locally",[4] and held that where a city charter provides for residency and a civilian trial board, those issues are not mandatory subjects of collective bargaining.

This Court *sua sponte* vacated the decision of the Court of Appeals and, on the authority of *Detroit Police Officers Association v Detroit,* 391 Mich 44; 214 NW2d 803 (1974), held that residency was a mandatory subject of collective bargaining and remanded for reconsideration of the civilian trial board question in light of *DPOA v Detroit, supra. Pontiac Police Officers Association v Pontiac,* 391 Mich 814 (1974).

On remand, the Court of Appeals, "[f]or the reasons expressed in our prior opinion", concluded that the question of a civilian trial board is a permissive, not mandatory, subject of collective bargaining.[5]

---

[2] *Pontiac Police Officers Association v Pontiac,* 50 Mich App 382, 384–385; 213 NW2d 217 (1973).

[3] Const 1963, art 7, § 22 provides:

"Under general laws the electors of each city and village shall have the power and authority to frame, adopt and amend its charter, and to amend an existing charter of the city or village heretofore granted or enacted by the legislature for the government of the city or village. Each such city and village shall have power to adopt resolutions and ordinances relating to its municipal concerns, property and government, subject to the constitution and law. No enumeration of powers granted to cities and villages in this constitution shall limit or restrict the general grant of authority conferred by this section."

[4] *See* MCLA 38.501, *et seq.;* MSA 5.3351, *et seq.,* authorizing cities, villages and municipalities to create a civil service commission for policemen and firemen.

[5] *Pontiac Police Officers Association v Pontiac (Supplemental Opinion),* 54 Mich App 282, 284; 220 NW2d 794 (1974).

II

In *DPOA v Detroit, supra,* this Court declared that under the PERA, as under the National Labor Relations Act (NLRA),[6] there are three categories or subjects of collective bargaining: mandatory, permissive, and illegal.[7]

Mandatory subjects of collective bargaining are those within the scope of "wages, hours, and other terms and conditions of employment".[8] If either party proposes a mandatory subject, both parties are obligated to bargain about it in good faith.[9]

Permissive subjects of collective bargaining are those which fall outside the scope of "wages, hours, and other terms and conditions of employment", and may be negotiated only if both parties agree.[10]

Illegal subjects are those which even if negotiated will not be enforced because adoption would be violative of the law or of the policy of the NLRA.[11]

The union contends that a civilian trial board which has exclusive jurisdiction over discipline of policemen, including discharge, demotion, or temporary suspension, directly affects the "wages, hours, and other terms and conditions of employment" of police officers and is a mandatory subject of collective bargaining.

---

[6] 29 USC 151, *et seq.*

[7] *See* Morris, The Developing Labor Law, chs 14–16 (Bureau of National Affairs, Inc, 1971).

[8] MCLA 423.215; MSA 17.455(15); § 8(d) of the NLRA (29 USCA 158[d]).

[9] *See* Morris, *supra,* p 387.

[10] Morris, *supra,* p 424.

[11] Morris, *supra,* p 435.

The city contends[12] that where the electors of a home-rule city have enacted a city charter providing for a civilian trial board, a "decision to require mandatory bargaining over such subject would * * * abridge the power and authority of the electors" to frame, adopt and amend their charter and would therefore "be in violation of the State Constitution, specifically art 1, § 1, and art 7, § 22".[13]

### III

Police officers are public employees.

The courts of this state have been guided by Federal precedent when construing the provisions of the PERA.[14]

Michigan, like the Federal courts, has adopted a broad view of "other terms and conditions of employment".[15] The Federal cases have uniformly held that *grievance procedure and arbitration,* layoffs, discharge, workloads, vacations, holidays,

---

[12] Additionally, the city says that we should not rely on Federal precedents when construing the phrase "wages, hours, and other terms and conditions of employment" which appears in the PERA and in § 8(d) of the NLRA (see fn 8). The PERA does not in terms mandate reliance on Federal constructions of the NLRA. Additionally, contends the city, to assume that the Legislature intended precedents developed in the context of private industry labor relations to be applicable to public employment labor relations "is to attribute to the Legislature a naivety in the field of labor relations, that surely never existed".

[13] Const 1963, art 1, § 1 provides:

"All political power is inherent in the people. Government is instituted for their equal benefit, security and protection."

Const 1963, art 7, § 22 is quoted in fn 3.

[14] *See Kaleva-Norman-Dickson School District · v Kaleva-Norman-Dickson Teachers' Association,* 393 Mich 583, 590; 227 NW2d 500 (1975); *Michigan Employment Relations Commission v Reeths-Puffer School District,* 391 Mich 253, 260; 215 NW2d 672 (1974); *Alpena v Alpena Fire Fighters Association, AFL-CIO,* 56 Mich App 568, 575; 224 NW2d 672 (1974).

[15] *DPOA v Detroit, supra; Alpena v Alpena Fire Fighters Association, AFL-CIO,* fn 14 *supra.*

sickleave, work rules, use of bulletin boards by unions, change of payment from a salary base to an hourly base, definition of bargaining unit work, and performance of bargaining unit work by supervisors" (emphasis supplied)[16] fall within "other terms and conditions of employment" and are mandatory subjects of collective bargaining.

In the private employment sector, arbitration as the final step of a grievance procedure has been held to be a mandatory subject for collective bargaining.[17] It has been estimated that 95% of all union contracts negotiated in private industry contain provisions for arbitration of either grievances or of questions concerning interpretation or application of the contract.[18]

Courts in other jurisdictions have held that a provision in a collective bargaining agreement requiring a public employer to submit disputes arising under the contract to final and binding grievance arbitration is enforceable. See *Board of Education v Associated Teachers of Huntington,* 30 NY2d 122; 282 NE2d 109; 331 NYS2d 17 (1972).[19]

We conclude that disciplinary procedures and a proposal for final and binding grievance arbitration concern "other terms and conditions of employment" and are a mandatory subject of collective bargaining.

---

[16] Morris, The Developing Labor Law, pp 404–405.

[17] *See Ostrofsky v United Steelworkers of America,* 171 F Supp 782, 790 (D Md, 1959), aff'd 273 F2d 614 (CA 4, 1960), dictum. *Cf. United Steelworkers of America v Warrior & Gulf Navigation Co,* 363 US 574; 80 S Ct 1347; 4 L Ed 2d 1409 (1960); *Hughes Tool Co v National Labor Relations Board,* 147 F2d 69, 73 (CA 5, 1945).

[18] *See* Note, *Legality and Propriety of Agreements to Arbitrate Major and Minor Disputes in Public Employment,* 54 Cornell L Rev 129 (1968).

[19] *See* also *Rockland Professional Fire Fighters Association v Rockland,* 261 A2d 418 (Me, 1970); *Providence Teachers Union v School Committee of Providence,* 108 RI 444; 276 A2d 762 (1971); *Danville Board of School Directors v Fifield,* 132 Vt 271; 315 A2d 473 (1974).

## IV

In *Rockwell v Crestwood School District Board of Education,* 393 Mich 616, 629, 630; 227 NW2d 736 (1975), we said that this Court had "consistently construed the PERA as the dominant law regulating public employee labor relations" and that the "supremacy of the provisions of the PERA is predicated on the Constitution (Const 1963, art 4, § 48) and the apparent legislative intent that the PERA be the governing law for public employee labor relations".[20]

*DPOA v Detroit, supra,* pp 66–68, is determinative of the city's argument that inclusion in a city's charter of "other terms and conditions of employment" abrogates the city's duty to bargain concerning such terms and conditions.

A civilian review board for discipline of police officers is a permissible charter provision.[21] *DPOA*

[20] "This Court has consistently construed the PERA as the dominant law regulating public employee labor relations. In *Detroit Police Officers Association v Detroit,* 391 Mich 44; 214 NW2d 803 (1974), we held that residency and retirement benefits are mandatory subjects of collective bargaining under the PERA, although provisions of a city's ordinance and charter, promulgated under the home-rule act, would otherwise govern. Earlier, in *Regents of the University of Michigan v Employment Relations Commission,* 389 Mich 96; 204 NW2d 218 (1973), this Court 'harmonized' the constitutional authority of the Regents to supervise the university and the authority of the Legislature to provide for the resolution of public employee disputes, holding that interns and residents in the University of Michigan Hospital were entitled to engage in collective bargaining. In *Wayne County Civil Service Commission v Board of Supervisors,* 384 Mich 363, 374; 184 NW2d 201 (1971), this Court held that the original authority and duty of the Wayne County Civil Service Commission 'was diminished *pro tanto*' by the PERA 'to the extent of free administration of the latter'.

"The analysis is the same whether we label this reconciliation repeal by expression or by implication, *pro tanto* diminishing or harmonizing. The supremacy of the provisions of the PERA is predicated on the Constitution (Const 1963, art 4, § 48) and the apparent legislative intent that the PERA be the governing law for public employee labor relations." *Rockwell v Crestwood School District Board of Education,* 393 Mich 616, 629–630; 227 NW2d 736 (1975).

[21] MCLA 117.4j; MSA 5.2083.

*v Detroit,* held that a public employer's collective bargaining obligation prevails over a conflicting "permissible charter provision".

Courts in other jurisdictions have held that it is not an unlawful delegation of municipal authority to include a provision for compulsory grievance arbitration in a collective bargaining agreement between a union and a municipality.[22]

V

The PERA does not obligate a public employer to agree to grievance or disciplinary procedures proposed by the union. It simply obligates the public employer to bargain in good faith regarding such procedures.

The city has not shown that the duty to bargain in good faith regarding grievance procedures has frustrated the exercise of its constitutional powers.[23]

The city makes essentially a policy argument for excluding disciplinary issues from the "mandatory

---

[22] *See City of Auburn v Nash,* 34 App Div 2d 345; 312 NYS2d 700 (1970). *Cf. Tremblay v Berlin Police Union,* 108 NH 416; 237 A2d 668 (1968); *Local 1226, Rhinelander City Employees, AFSCME, v City of Rhinelander,* 35 Wis 2d 209; 151 NW2d 30 (1967). *See* Note, fn 18 *supra,* tracing the development of the modern rule.

[23] We appreciate that by reason of the act of the Legislature providing for compulsory arbitration of police and fire department disputes (1969 PA 312; MCLA 423.231 *et seq.;* MSA 17.455[31] *et seq.)* if an impasse in collective bargaining affecting policemen occurs, the issue is subject to resolution in an "interest" arbitration proceeding. The problems arising in the application of that act *(see Dearborn Fire Fighters Union Local 412, IAFF v Dearborn,* 394 Mich 229; 231 NW2d 226 [1975])* do not, however, affect the analysis of what constitutes mandatory subjects for collective bargaining under the "other terms and conditions" language. This language defines the collective bargaining obligation of public employers and the bargaining representatives of their employees not covered by the interest arbitration statute and of employers and the bargaining representative of their employees in the private sector. *See* fn 12 and MCLA 423.2(b); MSA 17.454(2)(b).

subject" category to which they would otherwise belong. The public is directly affected by police officer misconduct. Trial boards allow for consideration of civilian complaints and "give citizens confidence in the propriety of the acts of their police department". Traditional grievance and arbitration hearings may not accomplish these objectives.

It may, indeed, be desirable, because of the unique "para-military" nature of police departments, to guarantee some degree of civilian control, insulated from the uncertainties of the collective bargaining process.

If the Legislature deems it appropriate to redefine the scope of the collective bargaining obligation of the public employers generally or of particular public employers and the representatives of their employees to include "wages, hours, and *some* other terms and conditions of employment", it may do so.

This Court cannot properly decide ad hoc that what has uniformly been regarded a "condition" of employment is not such a condition as applied to a particular public employer although it continues to be such a condition for other employers, public and private. By eschewing redefinition, we underscore the prerogative of the Legislature to give such consideration as it deems warranted to the claims of public employers that the scope of the collective bargaining obligation impinges unduly on their power to govern.

The Court of Appeals is reversed. No costs, a public question.

KAVANAGH, C. J., concurred with LEVIN, J.

COLEMAN, J. *(concurring)*. We agree with Justice LEVIN's holding that

"grievance and other disciplinary procedures are 'other terms and conditions of employment' within the meaning of the PERA and that the duty to bargain collectively on such issues and to perform in accordance with the terms of a collective bargaining agreement prevails over conflicting provisions of the charter of a home-rule city."

However, we find the reasoning in support of this holding to be too broad and susceptible of applications to which we would not subscribe.

FITZGERALD and LINDEMER, JJ., concurred with COLEMAN, J.

WILLIAMS, J. *(concurring)*. I concur in the narrow issue presented for our determination that a public employer's collective bargaining obligation, based on PERA, supersedes the home-rule powers of cities relative to the terms and conditions of public employment. I further agree that arbitration is included in the PERA provision of "other terms and conditions of employment" and is therefore a mandatory subject of collective bargaining. I reserve consideration, however, of whether this particular type of arbitration is permissible. See Justice LEVIN'S and my opinions in *Dearborn Fire Fighters v Dearborn,* 394 Mich 229; 231 NW2d 226 (1975).

RYAN, J., took no part in the decision of this case.