KMENT v CITY OF DETROIT

Docket No. 43899. Submitted September 30, 1980, at Lansing.—Decided September 8, 1981.

Alan F. Kment, a Detroit police officer, appeals by leave granted from a final order of the Workers' Compensation Appeal Board (WCAB) which set aside a referee's decision that he was entitled to payment of $1,500 from the City of Detroit as a penalty under the Worker's Disability Compensation Act (the act) for late payment of medical bills and travel expenses. The case was remanded to the referee so that Kment could make an election of remedies between coverage under the act or entitlement to benefits under the Detroit City Charter. Kment then sought leave to appeal to the Court of Appeals and leave was granted on May 3, 1979. An unpublished decision was originally rendered on September 3, 1980, reversing the decision of the WCAB on the basis that the benefits provided by the city charter were not, as a matter of law, "like benefits". The act waives coverage of police and firemen who are entitled to, and accept, "like benefits" provided by the charter of their municipality or village in lieu of coverage under the act. The city subsequently brought an application for rehearing, which was granted on October 7, 1980. The issue on appeal is whether the applicable disability benefit provisions of the Detroit City Charter provide "like benefits" so that Kment is barred from recovering benefits under both the act and the charter. *Held:*

The Detroit City Charter provides that a police officer claimant's salary and expenses related to a disability *may* become a

REFERENCES FOR POINTS IN HEADNOTES

[1] [No reference]
[2] [No reference]
[3] 48A Am Jur 2d, Labor and Labor Relations §§ 1790, 1791.
    56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 126, 127.
[4-6] 73 Am Jur 2d, Statutes § 204.
[5] 73 Am Jur 2d, Statutes §§ 145, 146.
[7] 73 Am Jur 2d, Statutes §§ 145, 204.
[8] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisons §§ 51-53.

charge upon the police fund and that he *may* be paid such salary and expenses at the discretion of the commissioner. In order for the benefits allowed by the charter to be "like benefits", a claimant must have a legally enforceable right to the benefits based upon the charter and not on the good will of the city council or any other city official. As a general rule, the permissive word "may" is interpreted as being mandatory in nature when the duty is imposed upon a public official and his act is for the benefit of a private individual. The word "may", as used in the Detroit City Charter, should be read as mandating the payment of charter disability benefits once it has been determined that a police officer has suffered a duty-related disability. Thus, Kment had a legally enforceable right to the benefits provided by the charter and the benefits which he has received under the provisions of the charter are, as a matter of law, "like benefits" proscribed by the Worker's Disability Compensation Act. He is not entitled to benefits under both the charter and the act. The decision of the WCAB is affirmed and the cause is remanded to the Bureau of Workers' Disability Compensation in order that Kment might make an election, on the record, between the benefits provided by the charter and those provided by the act.

Affirmed and remanded.

BRONSON, J., dissented. He would reverse and remand to the WCAB for consideration of other issues previously raised regarding Kment's entitlement to receive a penalty for late payment of benefits. He would find that there was nothing in the structure of the charter provision in dispute which would persuade him that the use of the word "may" was meant to connote a mandatory duty.

OPINION OF THE COURT

1. WORKERS' COMPENSATION — WAIVER OF BENEFITS — POLICEMEN — FIREMEN — MUNICIPAL CORPORATIONS — CHARTERS — LIKE BENEFITS.

    Policemen or firemen, or their dependents, in municipalities or villages of this state having charter provisions prescribing like benefits to the Worker's Disability Compensation Act, may waive the provisions of the act and accept in lieu thereof such like benefits as are prescribed in the municipal charter, but shall not be entitled to like benefits from both; the term "like benefits" does not mean identical benefits or co-extensive in every detail but, considering the full scope of the benefits, similar in salient features (MCL 418.161; MSA 17.237[161]).

2. WORKERS' COMPENSATION — WORDS AND PHRASES — LIKE BENEFITS.

A claimant must have a legally enforceable right to benefits provided in a city charter and the right must be dependent on the charter and not on the good will of the city council or any other city official before the benefits can be considered "like benefits", the receipt of which would preclude entitlement to benefits under the Worker's Disability Compensation Act (MCL 418.161; MSA 17.237[161]).

3. LABOR RELATIONS — MUNICIPAL CORPORATIONS — COLLECTIVE BARGAINING.

The duty to peform in accordance with the terms of a collective-bargaining agreement prevails over conflicting provisions of the charter of a home-rule city.

4. WORDS AND PHRASES — "SHALL" — "MAY" — STATUTORY CONSTRUCTION.

Use of the word "shall" ordinarily indicates that the doing of a particular thing is mandatory while use of the word "may" grants discretion; however, in the context of particular statutes, the term "may" has been held to require mandatory action while the term "shall" has been held not to be mandatory in nature.

5. STATUTES — JUDICIAL CONSTRUCTION — LEGISLATIVE INTENT.

The form of the verb used in a statute, *i.e.,* whether it says something "may" or "shall" or "must" be done, is the single most important textual consideration bearing on whether a statute is mandatory or directory; however, it is not the sole determinant and what it naturally connotes can be overcome by other considerations, chief among which is the intent of the Legislature.

6. STATUTES — JUDICIAL CONSTRUCTION — LEGISLATIVE INTENT.

The literal meaning of the words "may" and "shall" is not always conclusive in the construction of statutes in which they are employed; one should be regarded as having the meaning of the other when that is required to give effect to other language found in the statute or to carry out the purpose of the Legislature as it may appear from a general view of the statute.

7. STATUTES — JUDICIAL CONSTRUCTION — LEGISLATIVE INTENT — PUBLIC OFFICIALS — MANDATORY ACTS.

Certain generalities may be adduced in determining the intent of the Legislature concerning specific types of statutes; as a general rule, the permissive word "may" is interpreted as being mandatory in nature when the duty imposed by the statute is

upon a public official and the act involved is for the benefit of a private individual.

DISSENT BY BRONSON, J.

8. MUNICIPAL CORPORATIONS — CITY CHARTERS — AMENDMENT OF CHARTER — JUDICIAL CONSTRUCTION.

*Amendment of an existing city charter requires the approval of the electorate and the general rule that the intention of the Legislature is the touchstone for construing statutes has no application where an existing city charter is being construed (MCL 117.21; MSA 5.2100).*

*Gregory, Van Lopik, Korney & Moore* (by *W. Glen Jeakle, II),* for Kment.

*George W. Crockett, Jr.,* Acting Corporation Counsel, and *David M. Bradfield,* Assistant Corporation Counsel, for the City of Detroit.

Before: R. M. MAHER, P.J., and BRONSON and T. C. QUINN,* JJ.

PER CURIAM. Alan F. Kment appeals by leave granted the decision of the Workers' Compensation Appeal Board (WCAB) holding that he was not entitled to receive $1,500 in penalties from the City of Detroit for its late payment of medical bills under § 801(2) of the Worker's Disability Compensation Act (the act), MCL 418.801(2); MSA 17.237(801)(2).

Kment, a police officer for the defendant, City of Detroit, received a head injury during a narcotics raid staged on October 6, 1977. The parties do not dispute that the injury was duty-related. Kment's injury resulted in his being disabled from October 8, 1977, through mid-December, 1977. During this time, Kment continued to draw his normal salary.

---

* Former Court of Appeals Judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23, as amended in 1968.

He returned to work in mid-December, 1977, but was assigned light duty in the Detroit Police Fiscal Section because he continued to suffer from the effects of his injury. After obtaining prior authorization from his employer, Kment was treated for his injuries on an outpatient basis at the University of Michigan Hospital in Ann Arbor on January 17 and January 24, 1978. The cost of these visits, totaling $260, was billed directly to the Detroit Police Medical Section on January 29 and February 12, 1978. On February 14, 1978, the hospital bills were approved for payment by the Detroit Police Department physician and were routed to the fiscal section, where Kment worked. Kment, in the course of his duties, authorized payment of the bills and they were finally paid on May 4 and May 19, 1978. Payment was made directly to the hospital. Kment also claimed reimbursement for travel expenses incurred on his visits to the hospital and, on June 9, 1978, a check in the amount of $14.28 was personally received by Kment.

While working in the Fiscal Section, Kment became aware of a then new statute, MCL 418.801(2); MSA 17.237(801)(2), which provides for a $50 per day penalty for late payment of workers' compensation benefits.[1] On May 16, 1978, Kment filed a petition for hearing with the Bureau of Workers' Disability Compensation (Bureau) claiming to be entitled to the penalties described in § 801(2) of the act. The city responded to the petition and a rule V hearing was conducted be-

---

[1] "If weekly compensation benefits, accrued weekly benefits, medical bills, or travel allowance are not paid within 30 days after becoming due and payable in cases where there is no ongoing dispute, $50.00 per day shall be added and paid to the worker for each day over 30 days in which the compensation, medical bills, or travel allowance are not paid. Not more than $1,500.00 in total may be added pursuant to this subsection." MCL 418.801(2); MSA 17.237(801)(2).

fore an administrative law judge on June 28, 1978. In a decision signed July 11, 1978, and mailed July 17, 1978, the administrative law judge awarded Kment the $1,500 statutory maximum.

The city then appealed to the WCAB raising several potentially meritorious issues concerning the application of § 801(2). In an opinion and order dated January 25, 1979, the WCAB reversed the decision of the administrative law judge, holding that pursuant to § 418.161 of the act, MCL 418.161; MSA 17.237(161), Kment was not entitled to receive benefits under the act since he had elected to accept "like benefits" under the city charter. The matter was remanded to the Bureau in order to allow him to make an election between the benefits provided by the city charter and those provided by the act.

Kment then sought leave to appeal to this Court and leave was granted on May 3, 1979. A decision was orginally rendered on September 3, 1980, reversing the decision of the WCAB on the basis that the benefits provided by the city charter were not, as a matter of law, "like benefits". The city subsequently brought an application for rehearing, which was granted.

The issue on appeal remains whether the applicable disability benefit provisions of the Detroit City Charter provide "like benefits" so that plaintiff is barred from recovering benefits under both the act and the charter. At the heart of this issue is MCL 418.161; MSA 17.237(161), which provides in part as follows:

"Policemen, firemen, or employees of the police or fire departments, or their dependents, in municipalities or villages of this state having charter provisions prescribing like benefits, may waive the provisions of this act and accept in lieu thereof like benefits as are prescribed

in the charter but shall not be entitled to like benefits from both."[2]

Concerning police disability benefits, the present charter of the City of Detroit provides:

"The police commissioner's power under title 4, chapter 21, section 18 of the 1918 Charter shall in all respects continue in existence exactly as before until changed by ordinance." Detroit Charter, 1974, § 13-108.

The referenced section of the prior charter provided:

"Whenever any member of the police department shall become sick or shall be disabled in the performance of his duties, his salary and medical, surgical and hospital expenses during the time of such disabilities may become a charge upon the police fund and he may be paid such salary and expenses at the discretion of the commissioner, who shall inquire into the circumstances, and if satisfied that the charge upon said fund is correct and reasonable, may certify the same to be paid from the police fund." Detroit Charter, 1918, tit 4, ch 21, § 18.

In determining whether the above quoted portion of the charter provides "like benefits" we first note that the charter does not have to provide for benefits which are in every detail identical to those provided for by the act. Even if the workers' compensation scheme provides for a particular benefit which the charter does not, the benefits are "like" so long as the two plans are similar in their salient features. *MacKay v Port Huron,* 288 Mich 129, 134; 284 NW 671 (1939), *Johnson v Muskegon,*

[2] The statute was amended by 1980 PA 357, to be effective on January 1, 1982. So far as it concerns the quoted portion of the statute the amendment makes several stylistic alterations but does not appear to produce any substantive change.

61 Mich App 121; 232 NW2d 325 (1975). Accordingly, the fact that the Detroit City Charter does not provide for a penalty payment as does § 801(2) of the act is not dispositive. It is clear, however, that to be considered as "like benefits" the claimant must have a legally enforceable right to the benefits dependent on the charter and not on the good will of the city council or any other city official. *Cichecki v Hamtramck,* 382 Mich 428, 435; 170 NW2d 58 (1969). In *Cichecki,* a police officer for the City of Hamtramck suffered a heart attack and died, leaving a widow and six minor children. Under the city charter the widow was entitled to receive 1/2 of her husband's salary until she died or remarried.[3] The minor children were not entitled to receive anything under the charter unless their father had died without leaving a widow, in which case they would share equally in the benefits that the widow otherwise would have received. Mrs. Cichecki received the benefits specified in the charter. In addition, and apparently because of the needs of the children, the city council voted to double the amount she received. The children then applied for workers' compensation benefits. The

---

[3] " 'Sec. 7 *Widows, children; pensions; duration, rate.*—Pensions shall be paid as in this chapter provided to the widow *or* the children of any person herein described who shall die from causes entitling him, if still living, to retirement, or who shall die while in retirement or who shall die while eligible to retirement, said pension shall be equal to 1/2 of the rate of pay said person was entitled to receive at the time his disability was caused, or at the time of retirement by reason of length of service, or while eligible for retirement. Such a widow shall, during her lifetime or until she remarries, receive such pension.

" '*Should* any *such person* described in paragraph one, subsection (a) of this chapter *die, leaving no widow, his* child or *children* under the age of 18 years *shall receive such pension,* share and share alike. When any of such children attain the age of 18 years or shall die, the share of such child shall be paid to the remaining child or children under the age of 18 years, share and share alike, until such remaining child or children reach the age of 18 years respectively.' " *Cichecki, supra,* 433. (Emphasis in original.)

referee and the appeal board held that the children were not entitled to benefits because they had received "like benefits" under the charter. The Supreme Court reversed, holding that since the children had at best only a mere expectancy of benefits under the charter while the workers' compensation act provided them with present, vested, and enforceable rights to compensation, the benefits, if any, recoverable under the charter were not "like benefits". The city argued that the children had in fact received "like benefits" by virtue of the city council's resolution doubling the amount their mother received. The Supreme Court rejected this argument:

"The appellee would have us affirm the referee's and appeal board's determination that the doubling of the amount received *by the widow* through the resolution of the city council constituted a portion of 'like benefits' to plaintiff *children* with which the workmen's compensation act was concerned. We can make no such affirmation. It is clear that the workmen's compensation act requires that the 'like benefits' there proscribed be within the *charter pension* provision. 'Like benefits' must be legally enforceable rights dependent on the charter and not reliant on the good will of the city council. In this case, the council's resolution to increase the *widow's* pension gave no further right to the six plaintiffs; their common-law right to support was unaffected by this gesture, and the increase amounts to a gratuity to the widow with no assurance as to its continuation or amount." *Cichecki, supra,* 435. (Emphasis in original.)

Kment argues in the instant case that he did not have an enforceable right to benefits under the charter. He points out that the charter provides only that his salary and expenses related to his disability *"may* become a charge upon the police fund" and that he *"may* be paid such salary and

expenses *at the discretion of the commissioner"*.
He argues that, as a result, the payment of bene-
fits under the charter is a discretionary act and
that, under *Cichecki,* he has no legally enforceable
right to compensation pursuant to the charter.

In response, the city first argues that the com-
missioner's discretion under the charter is limited
to a determination of whether the disability was
duty-related and that in this regard the commis-
sioner is fulfilling the same function as would an
administrative law judge under the act charged
with determining whether a particular disability
arose out of and in the course of employment. We
do not believe, however, that under the language
of the charter the commissioner's discretion is
automatically so limited. The charter does require
the commissioner to "inquire into the circum-
stances", but even if he or she is "satisfied that the
charge upon said fund is correct and reasonable"
the commissioner is still not *required* to pay the
benefits but *"may* certify the same to be paid from
the police fund". Accordingly, the charter lan-
guage seemingly grants the commissioner author-
ity to deny benefits even when convinced that the
disability is duty-related. This language from this
portion of the Detroit City Charter is vastly differ-
ent from that found in the charters at issue in
*Cichecki* and *MacKay v Port Huron, supra,* 132, in
that those charters provided that the widows
"shall" receive the specified benefits.

The city next contends that, while the language
of the charter appears discretionary, when read in
connection with other sections of the charter,
when placed in the context of modern labor rela-
tions law, and when consideration is given to the
city's collective-bargaining agreement with plain-
tiff's union, the plaintiff does in fact have a legally

enforceable right to the benefits mentioned in the charter. Section 6-507 of the Detroit City Charter recognizes that "[e]mployees of the city have the right to collective organization and collective bargaining". Section 6-508 of the same charter states in part that "[t]he terms of any collective bargaining contract, and all rules and rulings made under it, shall take precedence over any inconsistent classifications, rules, or policies of the personnel department". Furthermore, the Supreme Court has held that "the duty * * * to perform in accordance with the terms of a collective bargaining agreement prevails over conflicting provisions of the charter of a home-rule city". *Pontiac Police Officers Ass'n v Pontiac,* 397 Mich 674, 677; 246 NW2d 831 (1976).[4] While *Cichecki* holds that to be "like benefits" the benefits must be legally enforceable on the basis of the charter, the Supreme Court has recognized in *Pontiac Police Officers* that the terms of a collective-bargaining agreement control in case of a conflict with the provisions of a charter. Accordingly, if the collective-bargaining agreement in the instant case between the city and Kment's union provided for a legally enforceable right to disability benefits, *Pontiac Police Officers* would suggest that the terms of the agreement would supersede the discretionary charter provision and, under the reasoning of *Cichecki,* Kment might be deemed to have received "like benefits". Further analysis of this issue, therefore, requires an examination of the applicable collective-bargaining agreement between the city and Kment's union, the Detroit Police Officers Association (DPOA).

---

[4] While none of the opinions in *Pontiac Police Officers* commanded a majority, a majority of the justices concurred in the specific holding quoted here. See *Central Michigan University Faculty Ass'n v Central Michigan University,* 404 Mich 268, 279; 273 NW2d 21 (1978).

The provisions of the collective-bargaining agreement referred to by the parties, insofar as they relate to duty-connected disability benefits, begin by incorporating the charter provisions on the same subject. The effect of this incorporation, of course, is to carry over in the agreement the same discretionary language found in the charter. The city then refers to other parts of the agreement concerning the establishment of a grievance procedure, the final step of which is binding arbitration. The procedure established specifically refers to the grievance and arbitration of a "medical issue". The city argues that the existence of this procedure allows the disabled officer to enforce his or her entitlement to disability benefits. The major problem with the city's argument is that article XI of the collective-bargaining agreement limits the arbitrators' authority as follows:

"The Board of Arbitrators shall limit its decision strictly to the interpretation, application, or enforcement of the specific articles and sections of this agreement, and it shall be without power or authority to make any decision:

* * *

"2. Involving the exercise of discretion by the City under the provisions of this agreement, its Charter, or applicable laws."

Since the award of benefits under the charter (and, by incorporation, under the agreement) seemingly remains within the discretion of the city (through the person of the police commissioner), the arbitrators are without authority to order the payment of benefits when, in the exercise of discretion, the commissioner has chosen not to award such benefits. Accordingly, the city fares no better under the terms of the collective-bargaining agreement than

it does under the charter.[5] In either event the city must establish that, although apparently discretionary, the provisions of the city charter do in fact establish an enforceable right to recover disability benefits.

Before addressing the city's remaining arguments concerning the enforceability of the disability charter provision, it is helpful to note the differences between *Cichecki* and the instant case. In *Cichecki,* the charter made absolutely no provision for the children of Officer Cichecki unless his wife predeceased him. While the city voluntarily doubled the benefits received by his widow because of the children's needs, that act was totally independent, having no relation at all to the language of the charter. In the instant case, however, the charter does provide disability benefits for officers such as Kment who are disabled in the line of duty. The problem arises because of the discretionary language used in the charter which would seemingly allow the commissioner to deny benefits even if the disability was, as here, undisputedly duty-related. It is suggested by the city, however, and not disputed by Kment, that once it has been determined that a particular disability is in fact duty-related the benefits provided in the charter are routinely awarded. This further distinguishes the instant case from *Cichecki.* the Cichecki children were absolutely disqualified from receiving charter benefits since their mother was still living. Officer Kment, on the other hand, was not only specifically included within the class of persons potentially entitled to receive charter benefits

---

[5] There is some doubt as to whether the particular collective-bargaining agreement referred to by the parties was still in effect at the times relevant to the instant case. Given our disposition of this issue, however, and given that the city has failed to support its arguments by reference to a more recent agreement, we do not believe it is necessary to resolve the matter.

(those with duty-related disabilities), but the city
suggests that the history of its conduct under the
charter establishes that once it is found that an
officer is suffering from a duty-related disability,
benefits under the charter are *always* awarded.
Accordingly, the city argues that, while the lan-
guage of the charter appears discretionary, history
and custom establish that Kment in fact had an
enforceable right to recover the charter benefits he
was actually awarded.

Ordinarily, use of the word "shall" indicates
that the doing of a particular thing is mandatory
while use of the word "may" grants discretion.
*Law Dep't Employees Union v Flint,* 64 Mich App
359, 368; 235 NW2d 783 (1975). This is not always
the case, however, and it has often been held in
the context of particular statutes that the term
"shall" is not mandatory and that the term "may"
is. *McBrian v Grand Rapids,* 56 Mich 95; 22 NW
206 (1885), *Smith v City Comm of Grand Rapids,*
281 Mich 235; 274 NW 776 (1937), *Burns v Auto-
Owners Ins Co,* 88 Mich App 663; 279 NW2d 43
(1979), *Nortown Theatre, Inc v Gribbs,* 373 F Supp
363, 367-368 (ED Mich, 1974), *rev'd sub nom Amer-
ican Mini Theatres, Inc v Gribbs,* 518 F2d 1014
(1975), *rev'd sub nom Young v American Mini
Theatres, Inc,* 427 US 50; 96 S Ct 2440; 49 L Ed 2d
310 (1976). "Although the form of the verb used in
a statute, *i.e.,* whether it says something 'may' or
'shall' or 'must' be done, is the single most impor-
tant textual consideration bearing on whether a
statute is mandatory or directory, it is not the sole
determinant and what it naturally connotes can be
overcome by other considerations". 2A Sutherland,
Statutory Construction (4th ed), § 57.03, p 415.
Chief among such "other considerations" is, of
course, the intent of the Legislature. *Id.,* § 57.02, p

414. See *Spartan Asphalt Paving Co v Grand Ledge Mobile Home Park,* 400 Mich 184, 187; 253 NW2d 646 (1977). "The literal meaning of the words 'may' and 'shall' is not always conclusive in the construction of statutes in which they are employed; *and one should be regarded as having the meaning of the other when that is required to give effect to other language found in the statute, or to carry out the purpose of the Legislature as it may appear from a general view of the statute".* *Strain v Southerton,* 75 Ohio App 435, 440-441; 62 NE2d 633 (1945). (Emphasis added.) In determining the intent of the Legislature, certain generalities may be adduced concerning specific types of statutes and it has been said as a general rule that "the permissive word 'may' is interpreted as mandatory when the duty is imposed upon a public official and his act is for the benefit of a private individual". 1A Sutherland, Statutory Construction (4th ed), § 25.04, p 301.

Our Supreme Court has recognized and given effect to these principles. In *McBrian v Grand Rapids, supra,* the statute in issue provided for the solicitation of sealed proposals relative to the construction of sewers. The statute also provided that the board of public works "may" contract with the lowest responsible bidder. The Supreme Court held:

"In construing this section, with reference to contracting with the lowest responsible bidder, the word 'may' must be construed as if it meant *shall.* What the board is required to do is for the benefit· of the public; the object being to invite competition, and prevent favoritism and fraud in awarding contracts for public works. It was not the intention of the Legislature to leave it discretionary with the board whether the contract should be made with the lowest responsible bidder." *McBrian, supra,* 98-99. (Emphasis in original.)

And in *Smith v City Comm of Grand Rapids,*
*supra,* the Supreme Court stated:

" 'Statutes which confer upon a public body or officer
power to act for the sake of justice, or which clothe a
public body or officer with power to perform acts which
concern the public interests or the rights of individuals,
are generally regarded as mandatory, although the
language is permissive merely, since they are construed
as imposing duties rather than conferring privileges.' "
*Smith, supra,* 242-243.

Applying these principles to the instant case, we
hold that the word "may", as used in title 4, ch 21,
§ 18 of the Detroit City Charter of 1918, and as
incorporated by reference in § 13-108 of the pres-
ent Detroit City Charter, should be read as man-
dating the payment of charter disability benefits
once it has been determined that a police officer
has suffered a duty-related disability. The charter
provision is clearly aimed at providing compensa-
tion to those officers who are disabled in the line
of duty. While the charter clearly contemplates
the exercise of some discretion and specifically
refers to the "discretion of the commissioner", we
believe that this discretion was intended to apply
solely to the issues of whether a particular disabil-
ity was duty-related and whether a particular
charge was correct and reasonable. The presence
of this degree of discretion does not defeat a find-
ing that the benefits provided by the charter are
"like benefits". As the city points out, similar
determinations are made under the workers' com-
pensation act. If the scope of the commissioner's
discretion under the charter were broader than
this, however, the essential purpose of the charter
provision in question would be defeated. It must be
assumed that this charter provision does not con-

template the arbitrary denial of benefits and, once it is determined that the disability is duty-related and that the amount of the benefits sought are correct and reasonable, the charter suggests no other basis on which the commissioner might deny benefits. The charter imposes a duty on a public official for the benefit of a private individual. Once the threshold requirements are satisfied, the police commissioner must certify that the charter disability benefits be paid.

Because we accord a mandatory construction to the charter provision, we hold that Kment had a legally enforceable right to the benefits provided by the charter. Accordingly, *Cichecki* does not defeat a finding that the charter benefits are otherwise "like benefits".

In his original brief on appeal, Kment also contended that the benefits provided under the charter were not "like benefits" because the disability benefit provisions of the charter were susceptible to change by ordinance. See MCL 117.21; MSA 5.2100. Kment has retreated from this argument on rehearing, and, in the face of *Detroit Police Officers Ass'n v Detroit*, 391 Mich 44; 214 NW2d 803 (1974), concedes that the possibility that the charter might be amended by ordinance does not automatically render the charter benefits unenforceable. We agree, and, accordingly, need not discuss the matter further.

The benefits which Kment has received under the Detroit City Charter are, as a matter of law, "like benefits" and under § 161 he cannot also receive workers' compensation benefits. Accordingly, the decision of the WCAB is affirmed, and, pursuant to that decision, this cause is remanded to the Bureau of Workers' Disability Compensation in order that Kment might make an election, on

the record, between the benefits provided by the charter and those provided by the workers' compensation act. *Johnson v Muskegon, supra,* 127-128.

Affirmed and remanded.

R. M. MAHER, P.J., and T. C. QUINN, J., concurred.

BRONSON, J. *(dissenting).* I respectfully dissent. Although the majority opinion reaches a sensible result on policy grounds, I do not believe it is justified given the unambiguous language of MCL 418.161; MSA 17.237(161), the "like benefits" provision of the Worker's Disability Compensation Act.

The question of whether the City of Detroit's charter provides for "like benefits" turns on the construction to be given the following provision:

"Whenever any member of the police department shall become sick or shall be disabled in the performance of his duties, his salary and medical, surgical and hospital expenses during the time of such disabilities may become a charge upon the police fund and he may be paid such salary and expenses at the discretion of the commissioner, who shall inquire into the circumstances, and if satisfied that the charge upon said fund is correct and reasonable, may certify the same to be paid from the police fund." Detroit Charter, 1918, title 4, ch 21, § 18.[1]

The majority holds that the word "may" as used in the charter means "shall". I agree with the majority that in particular peculiar circumstances use of the word "may", which ordinarily connotes discretion, may be permissibly construed as imposing a mandatory duty. I disagree, however, that this is an appropriate case for doing so.

---

[1] The present Detroit charter provides that this provision of the 1918 charter shall remain in effect as before until changed by ordinance. Detroit Charter, 1974, § 13-108.

Preliminarily, I note that we are not primarily concerned with the construction of a statute in this case but, rather, a charter.[2] Amendment of an existing city charter requires the approval of the electorate. MCL 117.21; MSA 5.2100. As such, the general rule that the intention of the Legislature is the touchstone for construing statutes has no applicability to this controversy. It is, of course, impossible for us to determine what the richly diverse Detroit electorate intended by enactment of the charter provision in question except insofar as this intention is expressed in the language used.

The majority finds that the charter provision provides discretion only on the "issues of whether a particular disability was duty related and whether a particular charge was correct and reasonable". I believe the structure of the provision cuts against this conclusion. The provision states that a police officer disabled during the course of duty "may become a charge" and "may be paid upon the police fund", not shall become a charge if various conditions precedent are met. The provision further provides that the commissioner "shall" investigate the circumstances of the disability and determine if the charge is "correct and reasonable". If so, the commissioner "may certify the same to be paid from the police fund". Again, the charter does not provide that the commissioner shall certify the charge if it determines the disability was duty-related and the charge correct and reasonable. The usages of the terms "shall" and "may" in the provision, taken in context, gives me reason to believe that whoever drafted the

_____

[2] The Supreme Court has already concluded that for charter benefits to be "like benefits" within the meaning of MCL 418.161; MSA 17.237(161), the charter must extend a specific, enforceable right to the benefits on behalf of the injured policeman or fireman. *Cichecki v Hamtramck,* 382 Mich 428; 170 NW2d 58 (1969).

provision believed that the words would be con-
strued in accordance with the normal mandatory-
discretionary dichotomy.

I believe the Michigan cases cited by the major-
ity, involving the construction of "may" as "shall",
are all distinguishable and are not compelling
authority for the proposition that the "may" under
consideration here means "shall". In *McBrian v
Grand Rapids,* 56 Mich 95; 22 NW 206 (1885), the
Supreme Court held that a statutory provision
stating that the lowest responsible bidder "may"
be selected had to be construed as "shall" *if any of
the bids were to be accepted.* It is easy for me to
see why "may" was used in the statute instead of
"shall". The contracting board was not required to
take the lowest bid in all circumstances, which
would have been implied by the use of the term
"shall", because the board was empowered to re-
ject all of the bids submitted. Although *Smith v
City Comm of Grand Rapids,* 281 Mich 235; 274
NW 776 (1937), noted that sometimes "may" will
be construed as "shall", the statute under consid-
eration there used the word "shall" and the defen-
dant was arguing for a discretionary construction
of the term. In *Burns v Auto-Owners Ins Co,* 88
Mich App 663; 279 NW2d 43 (1979), one panel of
this Court found that the rule of *expressio unius
est exclusio alterius* required a finding that "may"
as used in the statute meant "shall". In the sub-
ject case, I do not believe that application of any of
the rules of statutory construction cuts in favor of
treating the "may" in the Detroit charter provi-
sion as a "shall". I see nothing in the structure of
the provision in dispute which persuades me that
the use of "may" was meant to connote a manda-
tory duty.

I also dissent from the dicta in the majority

opinion that, had the collective-bargaining agreement between the Detroit Police Officers Association and the city provided for mandatory benefits for duty-related disabilities, the charter provision could then be construed as providing "like benefits". The majority correctly notes that a collective-bargaining agreement prevails over conflicting provisions of a home-rule city's charter. *Pontiac Police Officers Ass'n v Pontiac*, 397 Mich 674, 677; 246 NW2d 831 (1976), *Central Michigan University Faculty Ass'n v Central Michigan University*, 404 Mich 268, 279; 273 NW2d 21 (1978). However, where such a conflict exists and the collective-bargaining agreement provides for mandatory benefits, it is not obvious to me that these should be considered "like benefits" within the meaning of MCL 418.161; MSA 17.237(161). Such mandatory benefits are perhaps more properly characterized as being in spite of the charter rather than because of it. I remain to be convinced that the majority's position is correct on this point.

Finally, I specifically note that no attack was made in this case on the constitutionality of MCL 418.161; MSA 17.237(161). In other cases involving this provision, various equal protection challenges to the scheme have been lodged. At present, I do not know how I would resolve these constitutional challenges. I simply note the issue because I do not want to be understood to have impliedly ruled on them by this opinion.

I would reverse and remand to the WCAB for consideration of the other issues previously raised regarding Kment's entitlement to receive a penalty for late payment under MCL 418.161; MSA 17.237(161).